Elizabeth **MARSHALL** et al., Appellants,

v.

James **LYNN**, Individually and in his capacity as Secretary of Housing and Urban Development, et al.

No. 71–1786.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 18, 1972.

Decided Dec. 10, 1973.

As Amended Dec. 20, 1973.

of the National Housing Act, with both FHA mortgage insurance and below-market-interest-rate loans. In Tenants' Council of Tiber Island v. Lynn, 162 U. S.App.D.C. ——, 497 F.2d 648, we hold that the opportunity to participate need not be accorded tenants of housing constructed under § 220 of the Housing Act as part of area redevelopment plans.

Edward E. Schwab, Washington, D. C., for appellants.

C. Richard Beyda, Washington, D. C., for appellees, Linda Pollin Memorial Housing Corp. and Shannon & Luchs Company.

Percy H. Russell, Jr., Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, and J. Michael McGarry, III, Chevy Chase, Md., were on the brief for appellee, James Lynn, Secretary of HUD. Thomas A. Flannery, U. S. Atty. at the time the record was filed, also entered an appearance for appellee.

Before BAZELON, Chief Judge, and TAMM and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

This case is one of three related cases decided today which involve the procedural rights of tenants of housing constructed under various provisions of the Federal housing legislation, prior to official approval of rent increases. In Thompson v. Washington, No. 71–2049, 162 U.S.App.D.C. ——, 497 F.2d 626, we hold that tenants of low-rent public housing are entitled not only to receive notice of proposed rent increases but also to participate in the process of official consideration of rent increases by making written presentations. In the case at bar, we hold that the same opportunities must also be afforded tenants of low- and moderate-income housing constructed pursuant to § 221(d)(3)

## I. STATEMENT OF FACTS

This class action is brought against the Secretary of HUD and officials of the FHA on behalf of tenants of the Linda Pollin Memorial Housing Project[1] who assert that they were entitled to a hearing before their rents were increased in August, 1970. The Pollin Project was constructed and financed with the aid of mortgage insurance by FHA (Federal Housing Administration, now a division of the Department of Housing and Urban Development) pursuant to § 221(d)(3) of the National Housing Act.[2] After receiving notice of the proposed rental increase on July 1, 1970, the tenants demanded of an official of the District of Columbia Insuring Office of FHA that they be given an opportunity to be heard before FHA approved the increases. Their request was denied by the Acting Director of the D. C. Insuring Office who stated:

> This office is not obligated, nor do we have the authority to hold hearings with tenants regarding considerations for increases in maximum rents. The rent increase referred to in your letter was granted on the basis of increases in operating expenses and taxes. The increase was supported by ·a current financial report prepared by an independent accountant.

This litigation followed.

District Judge Parker granted summary judgment for defendants on the authority of Hahn v. Gottlieb, 430 F.2d 1243 (1st Cir. 1970) and McKinney v.

---

1. The project is owned by a non-profit corporation, the Linda Pollin Memorial Housing Corporation, and is managed by the Shannon and Luchs Realty Company.

2. 12 U.S.C. § 1715*l*(d)(3) (1970).

Washington, 143 U.S.App.D.C. 4, 442 F. 2d 726 (1970). Following substantially the same analysis presented in Thompson v. Washington, No. 71-2049, 162 U. S.App.D.C. ——, 497 F.2d 626, decided this day, both in establishing jurisdiction and standing, and on the merits, we reverse and remand.

## II. THE CLAIM OF RIGHT TO A HEARING

Although the statute governing § 221(d)(3) housing does not provide on its face for a hearing, this housing is "designed to assist private industry in providing housing for low and moderate income families and displaced families." 12 U.S.C. § 1715l(a). When § 221 was enacted in 1954, Congress plainly contemplated that low- and moderate-income tenants were to be the principal beneficiaries of this program. The National Housing Act of 1954,[3] Title III, contained numerous provisions dealing with slum clearance and urban renewal. The purpose of the § 221 program was the provision of rental housing for persons displaced by urban renewal projects, and this was to be accomplished through FHA insurance of long-term mortgages. Section 220 housing was to be built on the urban renewal sites, and § 221 was designed to house persons who were forced to move out of these areas.[4]

In 1961, § 221 was amended to liberalize the range of participants qualifying for FHA insurance, and the terms thereof. A new feature was added—direct interest subsidies, through the below-market interest rate (BMIR) program.[5]

The § 221(d)(3) program is described by the Government in its brief (at pp. 5-6) as follows:

"The program provides for mortgage insurance for qualified mortgagors. As a private non-profit corporation, Linda Pollin qualifies for insurance under the program. In order to be insured, the mortgage must meet certain requirements. There is a limitation on the total amount of the mortgage as well as on the amount allowed per dwelling unit. The interest rate on the mortgage to be insured must be either three per cent or such other rate as determined by the Secretary of the Treasury. In return for the mortgage insurance, the mortgagor agrees to be regulated. The statute provides that mortgagors are to be:

regulated or supervised under Federal or State laws or by political subdivisions of States, or agencies thereof, or by the Secretary under a regulatory agreement or otherwise, as to rents, charges, and methods of operation, in such form and in such manner as in the opinion of the Secretary will effectuate the purposes of this section.

"The Secretary has chosen from among the broad alternatives the statute affords him to regulate the mortgagor himself under a regulatory agreement. With respect to rent, the agreement in the instant case provides:

4. (a) Owners shall make dwelling accommodations and services of the project available to occupants at charges not exceeding those estab-

---

3. 68 Stat. 599 (1954).

4. *See* Conference Report H.Rep. No. 2271, 83d Cong., 2d Sess. 70 (1954). *Also see* H. Rep. No. 1429, 83d Cong., 2d Sess. 13, 15 (1954); S.Rep. No. 1472, 83d Cong., 2d Sess. 6 (1954). Section 221(a) of the Housing Act of 1954 provided "This section is designed to supplement systems of mortgage insurance under other provisions of the National Housing Act in order to assist in relocating families to be displaced as the result of governmental action in a community. . . ."

5. Housing Act of 1961, P.L. 87-70, 75 Stat. 149 (1961). BMIR operates through the participation of the Federal National Mortgage Association, under its "special assistance" functions. Typically a lender makes a market rate construction loan, insured by FHA, with a firm commitment from FNMA to purchase the loan at the below market interest rate. *See* P. David, Urban Land Development 297-301 (1970); B. T. Fitzpatrick, FHA and FNMA Assistance for Multi-Family Housing, 32 Law & Contemp. Probs. 439, 448-453 (1967).

lished in accordance with a schedule approved in writing by the Commissioner. . . .

\*   \*   \*   \*   \*   \*

(c) The Commissioner will at any time entertain a written request for a rent increase properly supported by sustaining evidence and within a reasonable time shall:

(i) approve a rental schedule that is necessary to compensate for any net increase since the last approved rental schedule in taxes (other than income taxes), and operating and maintenance costs over which owners have no effective control, or

(ii) deny the increase stating the reasons therefor.

"In implementing the program, FHA has established regulations which appear at 24 C.F.R. §§ 221.1–221.790. The applicable provision concerning rent is as follows:

*Rents and charges.* In approving the allowable rents and charges and in passing upon applications for charges, consideration will be given to the following and similar factors:

(1) Rental income necessary to maintain the economic soundness of the project.

(2) Rental income necessary to provide a reasonable return on the investment consistent with providing reasonable rentals to tenants."

The Government contends that such rent increase proceedings are summary in nature, with the agency receiving the owner's written submission, but affording no hearing on the rental increase. The Government's position overlooks the reality that an owner is entitled to make a written request and to present supporting evidence. As we have said in our *Thompson* opinion, a right to be heard embraces the opportunity to make a written presentation. That opportunity is available, under *Thompson*, to tenants of public housing programs under the Housing Act, in view of their statutory interest as beneficiaries of the rent limitations provided by Congress. We think the same analysis applies to tenants in § 221(d)(3) housing programs assisted by Government financing at below market interest rates. We reach this conclusion on our analysis of the purpose and character of the BMIR program.

In providing new BMIR incentives to private developers, Congress indicated its concern that the benefits should go to the low- and moderate-income tenants for whom the program was designed.[6] In fact, the BMIR was proposed because FHA insurance was perceived as not having accomplished the goal of providing housing for the intended beneficiaries. The House Report on the 1961 legislation stated: "There are many families whose incomes are sufficiently high so that they are not eligible for low-rent public housing but who . . . also cannot afford apartment-type housing even of modest design if it is financed at the going FHA interest rate and subject to the regular FHA insurance premium."[7] Under the House proposal, the availability of BMIR to a mortgagor was tied to controls on rents and eligibility of tenants. The House Report stated:

The below-market interest rate and reduction of FHA mortgage insurance premiums would be made available only where the mortgagors are willing to operate the housing subject to related controls on rentals and income

6. As amended by 1961 enactment § 221(a) provided: "This section is designed to assist private industry in providing housing for low and moderate income families and families displaced from urban renewal areas or as a result of governmental action." 75 Stat. 149 (1961).

7. H.Rep. No. 477, 87th Cong., 1st Sess. 11 (1961).

limits for admissions of tenants to the housing.[8]

Again the House Report states, referring to the BMIR program, that "The FHA would also establish and enforce maximum rentals; and would supervise management practices with respect to such matters as the establishment of appropriate reserves."[9]

Commentary in the Senate Report is similar. The Senate Report stated that BMIR was designed to assist those "families whose income are sufficiently high so that they are not eligible for low-rent public housing but who cannot afford homeownership even if assisted by FHA insurance of no downpayment 40-year mortgage loans."[10] The Report discussed the impact of BMIR on the old § 221(d)(3) as follows:[11]

> The below-market interest rate and reduction of FHA mortgage insurance premiums would be made available only where the mortgagors operate the housing subject to related controls on rentals and income limits for admissions of tenants to the housing. The section 221 program would continue to be available at market FHA mortgage insurance premium reductions for non-profit mortgagors building for displaced families or other families. In these cases the housing would be subject to the regular FHA regulations and restrictions.

From our reading of the legislative history, we have no doubt that the 1961 program of below-market interest rate subsidies was intended to benefit low- and moderate-income tenants. Therefore we follow our analysis in Thompson v. Washington, decided today, and hold that tenants in housing financed with Federal subsidy in the form of below-market interest rate loans have a statutory right to be heard before their rents are increased.[12]

Tenants in housing financed under the predecessor § 221(d)(3) program, consisting only of FHA mortgage insurance without BMIR, stand in a different position. From the provision of FHA mortgage insurance alone we find it difficult to infer any Congressional intent to provide continuing benefits to tenants in the form of rent control. Provision of FHA insurance represented Government intervention in the market to assure credit, a provision that stimulated the construction of housing which might not otherwise have become available for occupancy. But it is not clear that Congress intended to establish a continuing program of controlled rents monitored for the protection of tenants. On the record before us we cannot be certain

8. *Id.*

9. *Id.* at 12.

10. S.Rep. No. 281, 87th Cong., 1st Sess. 7 (1961).

11. *Id.* at 8.

12. In so holding we are aware of the decisions to the contrary in two other circuits, Hahn v. Gottlieb, 430 F.2d 1243 (1st Cir. 1970) and Langevin v. Chenango Court, 447 F.2d 296 (2d Cir. 1971). Our holding is on statutory grounds, but contrary to these decisions, we regard the constitutional question of the tenants' right to a hearing as quite open. As we have explained in Thompson v. Washington, we believe the *Hahn* court, in denying any right to be heard, was heavily influenced by the appellant's assertion that a full-dress adjudicative hearing was required, and we have decided the issue of the right to be heard *vel non* without such a distraction. The Second Circuit, in *Chenango Court,* rejected a due process claim on the ground that the Government did not increase the rent but merely approved the increase and that the requisite Government involvement for due process guarantees was lacking. Although we do not decide the constitutional question today, we are skeptical that the distinction on which the Second Circuit relies is very helpful. In many forms of government regulation, the regulated party makes proposals to which the regulating agency responds, and yet due process guarantees have always been thought applicable. The division of labor between the regulator and the regulated—between *sua sponte* intervention by the agency and requests for change by the regulated party—does not seem, to us, to diminish the government's involvement or to alter the essential characterization of the process as government regulation.

how the program prior to the adoption of BMIR actually operated. The mere fact of administrative scrutiny of rents is not inconsistent with a predominant role for market forces, as appears from our decision today in Tenants' Council of Tiber Island v. Lynn. The legislative history of the 1961 amendments implies that rents in § 221(d)(3) housing had predominantly reflected market changes, at least as to the important factor of rate of mortgage interest. The resulting inability of the families which Congress desired to protect to purchase adequate housing led to the adoption of the BMIR subsidy. Thus, in 1961 Congress focused on the BMIR program as the mechanism to aid families unable to purchase housing at market rents, and specifically tied that program to a mortgagor's submission to rent controls, applied for the benefit of tenants. We do not discern a similar protection in the form of continuing regulation of rents in behalf of tenants in housing financed under § 221(d)(3) but without the BMIR subsidy. Hence we conclude that the constitutional or statutory claims of those tenants that they are entitled to be heard before rents are increased are without merit. While the absence of rent control in such housing may mean that some tenants will find it difficult to meet rental payments, that hardship is insufficient, without a more specific statutory basis, to invoke a judicial remedy under the Constitution. See Lindsey v. Normet, 405 U.S. 56, 74, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972).

We remand to the District Court to determine whether the Linda Pollin Memorial Housing project receives Federal subsidy in its financing in the form of BMIR, and if so, to enter an appropriate order effecting the procedural rights of tenants we have delineated in Part III E of our opinion in Thompson v. Washington.

The judgment is vacated and the case remanded for further proceedings not inconsistent with this opinion.

So ordered.