No. 73–6874.  SPADY ET VIR *v.* MOUNT VERNON HOUSING AUTHORITY.  Ct. App. N. Y.  Certiorari denied.

MR. JUSTICE DOUGLAS, dissenting.

Petitioners Linda and Vincent Spady applied for public housing in Mount Vernon, N. Y., in early 1971. Their application was accepted, and in early July they were told that they were eligible for low-income public housing accommodations. On July 9, 1971, petitioners signed a lease, paid one month's rent plus a security deposit, and were assigned to a specific apartment which would be available to them on July 15, 1971. On or before that date, however, the respondent Housing Authority learned from other tenants that Vincent Spady had previously used the name of Vincent Bentley,[1] and that he had compiled a criminal record under that name. Investigation disclosed that Vincent had been arrested once on burglary charges, which were dismissed when the complaining witnesses failed to appear before the grand jury, and had been arrested again on robbery charges, which were dismissed when he was certified for treatment as a narcotics addict. Since those arrests, he had undergone treatment for his narcotics addiction, had been released as rehabilitated, and was enrolled in a methadone maintenance program.

Upon learning these details, the Housing Authority revoked petitioners' eligibility and removed them from its housing list, on the grounds that their application had been "untruthful" and had failed to reveal Vincent's prior arrests and certification as a narcotics addict.[2] Pe-

---

[1] His full name at birth was Vincent Spady, but he took the name of Bentley for several years when his mother remarried under that name.

[2] It is undisputed that the application form used by the Authority did not expressly request any information concerning aliases, prior

titioners requested an evidentiary hearing to contest the revocation, but the Housing Authority declined to grant a hearing. Petitioners then brought suit in the New York Supreme Court, which ordered the Authority to hold an evidentiary hearing to determine whether petitioners met applicable desirability standards for public housing eligibility. A divided Appellate Division reversed, holding that petitioners were not entitled to a hearing because they were not tenants in possession, and that the Authority's revocation of petitioners' eligibility had a rational basis. The New York Court of Appeals affirmed on the memorandum of the Appellate Division.

Petitioners contend that they were entitled to an evidentiary hearing before they could be deprived of their eligibility for public housing; they further contend that the reasons advanced by the Authority in support of that revocation are so arbitrary and so lacking in any rational basis as to constitute a denial of due process of law and of the equal protection of the laws.[3]

Our decisions in recent years have identified a wide range of important interests which the State may not trample upon without a prior hearing. Thus we have required hearings prior to termination of welfare benefits, *Goldberg* v. *Kelly,* 397 U. S. 254 (1970); revo-

---

arrests, or drug addiction. The claim of untruthfulness in the application is, therefore, simply untenable.

[3] Petitioners argue that prior arrests, standing alone, have virtually no probative value in establishing actual misconduct or criminal propensities. They further argue that it is wholly irrational to discriminate against a rehabilitated addict on the basis of his prior addiction or on the basis of criminal acts committed during the period of such addiction, and that such discrimination is fundamentally inconsistent with the nature and purposes of narcotics rehabilitation programs. In the absence of a more specific evidentiary record concerning the circumstances of Vincent's prior arrests and the extent of his rehabilitation, it is impossible to evaluate these arguments as applied to him.

cation of a driver's license, *Bell* v. *Burson,* 402 U. S. 535 (1971); revocation of parole, *Morrissey* v. *Brewer,* 408 U. S. 471 (1972), or probation, *Gagnon* v. *Scarpelli,* 411 U. S. 778 (1973); and, under certain circumstances, termination of a teaching position at a state college or university, *Board of Regents* v. *Roth,* 408 U. S. 564 (1972), and *Perry* v. *Sindermann,* 408 U. S. 593 (1972).

Eligibility for public housing, under the circumstances presented here, arguably merits comparable protection. The long waiting lists maintained for low-income housing projects are ample proof of the pressing demand. An applicant who has been certified as eligible and has spent many months on a waiting list has a substantial interest in maintaining that place and a substantial expectancy of obtaining housing. Summary removal from an eligibility list just prior to occupancy can work serious injury, since the applicant may be relegated to the end of another growing line.

Today's mounting bureaucracy, both at the state and federal levels, promises to be suffocating and repressive unless it is put into the harness of procedural due process. One who need not explain the reasons for his actions can operate beyond the law. One who need not even hear a complaint from the citizen can turn sheer power into an arbitrary force.[4] Bureaucrats who can, without hearings, ride herd on the people they are supposed to serve, are able to dispense with the concept of equal protection and make their *ipse dixit* the law. Of course not every agency action should be put down for a hearing lest the work of

---

[4] As stated by Mr. Justice Frankfurter in *Anti-Fascist Committee* v. *McGrath,* 341 U. S. 123, 170 (1951):

"The heart of the matter is that democracy implies respect for the elementary rights of men, however suspect or unworthy; a democratic government must therefore practice fairness; and fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights." (Concurring opinion.)

government be paralyzed. Yet one who has no interest that can be called an entitlement may still have an expectancy on which plans are built and living arrangements made. If, as in Spady's case, he is suddenly cast into the outer darkness and placed on the State's blacklist for housing, he may suffer greatly. The unexamined inferences of this agency and the whispered rumors of Spady's former employer may make him and his family pariahs, so far as housing is concerned.

What the decision on the merits should be is arguable. But I would grant the petition for certiorari and set the case for argument.