Al **HARLIB** et al., Plaintiffs,

**Evelyn Diamond et al., Intervening Plaintiffs-Appellants,**

v.

James T. **LYNN, Secretary of the Department of Housing and Urban Development, et al., Defendants-Appellees.**

No. 73–2079.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 15, 1974.

Decided Feb. 12, 1975.

**52**

Seymour J. Mansfield and William P. Wilen, Legal Assistance Foundation, Chicago, Ill., for plaintiff.

James R. Thompson, U. S. Atty., Gary L. Starkman, Asst. U. S. Atty., Chicago, Ill., Ronald R. Glancz, Atty., Dept. of Justice, Washington, D. C., Paul E. Freehling, Michael B. Fischer, Fredric B. Weinstein, Chicago, Ill., for defendants-appellees.

Before BARNES, Senior Circuit Judge,* and CUMMINGS and TONE, Circuit Judges.

CUMMINGS, Circuit Judge.

The appellants are five of six intervening plaintiffs in the court below [1] and will be referred to herein as the Intervenors. The intervening complaint named as defendants the Secretary of the Department of Housing and Urban Development ("HUD"), the Director of the Chicago Area Office of HUD, Belmont Avenue Associates, a partnership that is the beneficial owner of Belmont Harbor Towers,[2] and Seay & Thomas, Inc., managing agent of Belmont Harbor Towers.

The intervening complaint purportedly is brought on behalf of all residents of Belmont Harbor Towers. It is alleged that the building consists of 277 apartments "financed and constructed under the program of insurance for mortgages on housing for low and moderate-income persons established by Section 221(d)(3) of the National Housing Act, 12 U.S.C. § 1715*l*(d)(3)." The Intervenors assert that on May 1, 1968, Belmont Avenue Associates and its constituent partners began participation in the Section 221(d)(3) Below Market Interest Rate program by entering into a regulatory agreement with HUD. The regulatory agreement was attached to the interven-

---

* Senior Circuit Judge Stanley N. Barnes of the Ninth Circuit is sitting by designation.

1. Edna Shanken, one of the intervening plaintiffs, has withdrawn from the litigation. The original plaintiffs were Al Harlib and seven other tenants of Belmont Harbor Towers, an apartment building located at 510 West Bel-

mont Avenue in Chicago. The plaintiffs have not appealed from the dismissal of their complaint. This appeal involves the dismissal of the intervening plaintiffs' complaint.

2. Summons was never served on Belmont Avenue Associates in the intervening action, and it is not represented in this appeal.

ing complaint. That complaint also quotes the following paragraphs from the regulatory agreement:

4(b) Owners shall make dwelling accommodations and services of the project available to occupants at charges not exceeding those established in accordance with a schedule approved in writing by the Commissioner. * * *

* * * * * *

4(d) The Commissioner will at any time entertain a written request for a rent increase properly supported by substantiating evidence and within a reasonable time shall:

(1) Approve a rental schedule that is necessary to compensate for any net increase, occurring since the last approved rental schedule in taxes (other than income taxes) and operating and maintenance expenses over which the owners have no effective control, or

(2) Deny the increase stating the reasons therefor.

According to the intervenors, regulations issued under the applicable statute recite that owners of Section 221(d)(3) properties must agree to restrictions on (1) the maximum income level of persons to whom apartments would be rented; (2) the maximum rentals to be charged to lessees; and (3) a 6% maximum rate of return on the owners' equity investment in the project.

It is alleged that from 1969 until November 1, 1972, a rental schedule was approved by HUD and that HUD also established maximum income levels for lessees of these apartments. The leases and their extensions recite that if a rent increase is authorized by HUD, "the Lessee agrees to pay the Lessor or his Agent the amount of rent increase allowed."

According to the Intervenors, during 1972 a $242,000 bill for 1971 real estate taxes was issued to the owners of Bel-

mont Harbor Towers. This was $170,000 higher than the 1970 taxes. In April 1972, the owner of this property lodged a complaint with the Assessor of Cook County, seeking a reevaluation of the anticipated 1972 tax assessment. In June of 1972, the owner filed an action in the Circuit Court of Cook County, Illinois, seeking a reduction of the 1971 real estate tax assessment.

It is alleged that in July 1972, while the tax protests were pending but after the payment on account of $93,000 of the 1971 tax bill, the owner of Belmont Harbor Towers applied to HUD for permission to increase rents. No notice of this application was given to the tenants, nor were they afforded an opportunity to present comments or objections. The requested increase was purportedly based largely on the higher real estate tax assessment, and in September 1972, rental increases of 25% were approved by HUD to become effective November 1, 1972. These increases resulted in an additional anticipated rental income of about $115,000 for the year ending October 31, 1973.

In an amendment to their complaint, Intervenors assert that in 1973, as a result of the aforementioned tax challenges, the 1971 real estate tax bill was reduced to approximately $70,000 above the 1970 tax level. HUD then redetermined the amount of allowable rent increases, and on April 9, 1973, directed that the 25% November 1, 1972, rent increase would remain in effect only through April 30, 1973, and be reduced to 15% after May 1, 1973. Consequently, anticipated aggregate rental income for the year ending October 31, 1973, was approximately $92,000 higher than for the previous year.[3]

The Intervenors complain that if the tenants had been notified of the application for permission to increase the rent schedules and had participated in a hearing upon such application, they could have provided information with respect to "maintenance, comparability of serv-

---

**3.** The private defendant submits that the $92,000 increase in rental income was necessary to compensate for increased expenses, including taxes. We do not reach that issue.

ices, reasonableness of management fee, competitiveness in local rental market, consultation with and attitude of tenants, ability of present tenants to pay the increased rent without undue hardship, and likelihood of rent collection difficulties." Intervenors sought to enjoin the two federal defendants from granting any application for a rent increase without giving them prior notice and an opportunity to be heard. They also requested the district court to set aside the rent increases and to see that all tenants of Belmont Harbor Towers be provided with all possible rental assistance and be granted appropriate restitution.

In four separate memorandum opinions and orders issued between March and September 1973, the district court dismissed all the claims of the Intervenors, apparently for "failure to state a claim upon which relief may be granted." Fed.R.Civ.P. 12(b)(6).[4]

In September 1974, HUD proposed new interim regulations providing the following procedures for tenant participation in the process whereby HUD passes upon requests by a mortgagor of Section 221(d)(3) units for an increase in the maximum permissible rental charges:

(1) The mortgagor must give notice to the tenants of intent to request approval of an increase in the maximum permissible rents 30 days before such request is filed.

(2) All materials which the mortgagor intends to submit to HUD in support of the application must be made available for inspection by the tenants 30 days before the request is filed with HUD.

(3) Tenants may submit written comments for or against the increase either with the mortgagor, who must then file such comments along with the request for an increase, or directly with HUD.

(4) After HUD has considered the application and has made a determination to approve or disapprove it, the local HUD office will furnish a written statement of reaons for HUD's decision to the mortgagor, who must then post such statement in each structure of the affected project.[5]

The Government has informed us that these interim regulations became effective October 14, 1974, and will apply to all applications submitted thereafter. No final agency rules have been promulgated.

Intervenors first argue that they had a right to be heard before the proposed increases became effective, which HUD wrongfully denied to them. They assert that such a right arises from two independent sources: (1) by implication from the statutes establishing the Section 221(d)(3) housing program and (2) from the due process clause of the Fifth Amendment. Six other Circuits have already dealt with similar claims.[6] Rather than replow the ground already extensively covered in those cases, it is sufficient to refer to the extant opinions of the other Circuits in order to dispose of Intervenors' claim that they were wrongfully denied a hearing.

■■ Intervenors cite those cases which support their contention that the statutory framework of which Section 221(d)(3) is a part implies a right to a hearing before an application for increased rental charges may be approved.[7]

---

4. The original plaintiffs included the Cook County Tax Assessor as a defendant. Intervenors do not appeal the district court's dismissal of this party for lack of jurisdiction.

5. 24 C.F.R. §§ 401.1–401.4, 39 Fed.Reg. 32738 (1974).

6. Paulsen v. Coachlight Apartments Co., 507 F.2d 401 (6th Cir., 1974); Geneva Towers Tenants Organization v. Federated Mortgage Investors, 504 F.2d 483 (9th Cir. 1974); Marshall v. Lynn, 497 F.2d 643 (D.C.Cir.1973),

certiorari denied, 419 U.S. 970, 95 S.Ct. 235, 42 L.Ed.2d 186; People's Rights Organization v. Bethlehem Associates, 487 F.2d 1395 (3d Cir. 1973), summarily affirming 356 F.Supp. 407 (E.D.Pa.1973); Langevin v. Chenango Court Inc., 447 F.2d 296 (2d Cir. 1971); Hahn v. Gottlieb, 430 F.2d 1243 (1st Cir. 1970). See also McKinney v. Washington, 143 U.S. App.D.C. 4, 442 F.2d 726 (1970).

7. In Marshall v. Lynn, *supra* note 6, 497 F.2d at 645–648, a panel of the Court of Appeals

We find the decisions to the contrary persuasive and hold that no right to a hearing, express or implied, can be found in the statutes.[8] This Court also rejects Intervenors' claim that the due process clause of the Fifth Amendment mandates a hearing of some kind[9] before rental rates may be raised.[10] The statutes creating the 221(d)(3) housing program do not confer upon tenants such an "entitlement" to low rental rates that would invoke procedural due process requirements.[11] Of course, as to future rent increases, HUD's new regulations will afford tenants of Section 221(d)(3) housing the bulk of the procedural rights sought here.[12] Since the regulations are prospective only, the already authorized rent increases in dispute here need not be reprocessed thereunder. South East Chicago Commission v. Department of Housing and Urban Development, 488 F.2d 1119, 1122–1127 (7th Cir. 1973).

Intervenors also claim that they are third-party beneficiaries of Belmont Avenue Associates' regulatory agreement with the Government and that the

for the District of Columbia recognized that the statute does not provide on its face for a hearing, but nevertheless implied a statutory right to notice to tenants of proposed rent increases and an opportunity to respond in writing before the rents are increased. Paulsen v. Coachlight Apartments Co., *supra* note 6, follows *Marshall*; see also Thompson v. Washington, U.S.App.D.C., 497 F.2d 626 (1973).

8. Geneva Towers Tenants Organization v. Federated Mortgage Investors, *supra* note 6, 504 F.2d at 487, 493; People's Rights Organization v. Bethlehem Associates, *supra* note 6, 356 F.Supp. at 412 (applying an analogous statute); Langevin v. Chenango Court Inc., *supra* note 6, 447 F.2d, at 300; Hahn v. Gottlieb, *supra* note 6, 430 F.2d, at 1245–1246. See also McKinney v. Washington, *supra* note 6, 442 F.2d, at 727.

9. Unlike the tenants in some of the prior cases, Intervenors do not contend that a full-dress adjudicatory hearing is mandatory for each 221(d)(3) rent increase application. Intervenors seek all of the procedures now provided in the new interim regulations (*supra*, p. 54) plus the right to make *oral* submissions in "certain" cases and the right to have an "impartial hearing officer" decide if the increase is warranted. In a supplemental brief the Intervenors have further complained that the notice provisions of the interim regulations are "too vague and indefinite." Because we hold that neither the statutes nor the due process clause require even those procedures mandated in the new regulations, Intervenors' claims to additional procedural safeguards must fail.

10. This is the position adopted by the majority in Geneva Towers Tenants Organization v. Federated Mortgage Investors, *supra* note 6, 504 F.2d, at 488–493. In Marshall v. Lynn, *supra* note 6, the question of the applicability of due process was not reached.

11. Geneva Towers Tenants Organization v. Federated Mortgage Investors, *supra* note 6, 504 F.2d, at 493–498 (Hufstedler, J., dissenting). In Paulsen v. Coachlight Apartments

Co., *supra* note 6, 507 F.2d at 403, the opinion of the Court rejects a due process claim identical to the one presented here without revealing the Court's analysis. Judge McCree, concurring separately, noted that his reasons were the same as those put forth by Judge Hufstedler in *Geneva Towers*. Langevin v. Chenango Courts Inc., *supra* note 6, 447 F.2d at 300–302, Hahn v. Gottlieb, *supra* note 6, 430 F.2d at 1246–1249, and McKinney v. Washington, *supra* note 6, 442 F.2d, at 727, also rejected Section 221(d)(3) tenants' claims to a due process hearing. However, each of these cases was decided before the Supreme Court's decision in Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 which made clear the proper two-step analysis that must be applied in determining when due process requires some type of hearing. Therefore, we endorse only the result in those cases, not the analysis.

Our holding here does not conflict with that in T. A. Moynahan Properties, Inc. v. Lancaster Village Cooperative, Inc., 496 F.2d 1114 (7th Cir. 1974). In *Moynahan*, plaintiff's property rights under a contract with another private party were totally abrogated when HUD exercised its power to cancel the contract. In this case no tenant's interest in his lease was totally abrogated by HUD; rather rents were increased in accordance with the provisions of the standard lease. We are not called upon to decide if the cancellation of a Section 221(d)(3) tenant's lease would require the protection of the due process clause. Compare the dissent to the denial of certiorari in Spady v. Mount Vernon Housing Authority, 419 U.S. 983, 95 S.Ct. 243, 42 L.Ed.2d 192.

12. See note 9, *supra*. Intervenors also sought to compel HUD to reveal the contents of the supporting documents filed with the application for increase under the Freedom of Information Act, 5 U.S.C. § 552. Because Intervenors received these documents through discovery and the new regulations provide for their availability to tenants in the future, no purpose would be served in deciding this claim.

rent increase constitutes a breach thereof. However, the language in paragraph 4(d) of that agreement (*supra,* p. 53) contemplates rent increases pursuant to the procedures followed in this case and accords no notice or hearing rights to tenants.[13] Similarly, the leases and lease extensions accord them no such rights.

■ Intervenors' next principal point is that they are entitled to a judicial review of HUD's decision to raise rents. Again we agree with the First, Second and Third Circuits that Congress did not intend any such review.[14] Our opinion in King v. United States, 492 F.2d 1337, 1343–1345 (7th Cir. 1974), is not to the contrary, for it involved a different provision of the Administrative Procedure Act from that relied upon by Intervenors.

The Intervenors' other contentions have been weighed but found lacking in substance. Therefore, the orders in question are affirmed.

**13.** Consequently, neither Baker v. F & F Investment Co., 489 F.2d 829 (7th Cir. 1973), nor Avco Delta Corporation Canada Ltd. v. United States, 484 F.2d 692 (7th Cir. 1973), certiorari denied, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490, is in point.

**14.** Hahn v. Gottlieb, *supra* note 6, 430 F.2d at 1249–1251; Langevin v. Chenango Courts Inc., *supra* note 6, 447 F.2d, at 302–304; People's Rights Organization v. Bethlehem Associates, *supra* note 6, 356 F.Supp. at 410–411. See also Davis Associates Inc. v. Secretary, Department of Housing and Urban Development, 498 F.2d 385 (1st Cir. 1974).