Richard PICKUS et al., Appellants,

v.

**UNITED STATES BOARD OF PAROLE.**

No. 75–1235.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 18, 1975.

Decided June 9, 1976.

---

Before LEVENTHAL, WILKEY, Circuit Judges and SOLOMON,* United States Senior District Judge for the District of Oregon.

Opinion for the Court filed by Circuit Judge LEVENTHAL.

LEVENTHAL, Circuit Judge:

This appeal asks us to decide whether the U.S. Board of Parole must provide federal prison inmates with some opportunity for oral presentation of views on the Board's proposed rules governing the grant or denial of parole. The rules set up guidelines indicating the customary range of time to be served before release for various combinations of offense and offender characteristics. As a predictive aid, the rules also provide for an evaluation sheet containing a "salient factor score" to serve as an aid in determining the parole prognosis. The rules specifically provide that decisions outside of the guidelines may be rendered when circumstances warrant (e. g. cases "with exceptionally good institutional program achievement"). 39 Fed.Reg. 45296 et seq. (Dec. 31, 1974). This court has previously held in this case that the Administrative Procedure Act's rulemaking provisions apply to such Parole Board rules.[1] Appellants now urge that principles of fundamental fairness and the Due Process Clause of the Fifth Amendment require an opportunity for prisoners to comment orally on the proposed rules before they are permanently adopted. We conclude that oral presentation of views is not required, and accordingly affirm the district court's judgment.

## I. PRELIMINARY ISSUE

The Parole Board asserts that this case is moot[2] because none of the three

Richard B. Wolf, Washington, D. C., with whom Victor H. Kramer, Washington, D. C., was on the brief for appellant.

Patrick J. Glynn, Atty., Dept. of Justice, Washington, D. C., with whom Robert L. Keuch, Atty., Dept. of Justice, Washington, D. C., was on the brief for appellee.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. *Pickus v. United States Board of Parole,* 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974), relying on 5 U.S.C. § 553 (1970).

2. We are aware that the substantive legislation under which the regulations involved in this appeal were promulgated has been replaced by the Parole Commission and Reorganization Act, 90 Stat. 219 (1976). That Act became effective May 14, 1976. The Act specifically gives the Parole Commission, automatically composed of the members of the Parole Board which it replaces, the power to issue regulations, and requires them to issue parole guidelines and abide by the APA's § 553 notice-and-comment requirements. This change was not urged as a point on which to find mootness.

plaintiffs are currently incarcerated.[3] We called for supplementary memoranda. Petitioners contend their dispute with the Board is alive in view of its continuing supervision over plaintiffs Richard Pickus, who will remain on parole until his sentence expires on May 30, 1980, and John Alkes, who is on mandatory release status and will remain under the Board's jurisdiction until his maximum term expires on February 8, 1978.

In *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), the Court held the case moot because the respondent had been completely released from supervision, and therefore retained no interest in the constitutionality of North Carolina's parole granting procedures. However, plaintiffs in this case have not been completely released from supervision. In *Ramer v. Saxbe*, 173 U.S.App.D.C. 83, 91–92, 522 F.2d 695, 703–04 (1975) the court found that in the circumstances of that case, shifting custodial situations should not moot the appeal. The court recognized that "[w]hether actually incarcerated or in parole or mandatory release status, the appellants continue sub-

ject to the rules and regulations of the Bureau of Prisons."[4] We might similarly find here that plaintiffs are sufficiently subject to continuing Parole Board supervision that they have a present interest in regulations governing parole release decisions. It is permissible, however, to pass over a threshold issue such as mootness when as here the resolution on the merits is clear. See *Ripon Society v. National Republican Party*, 173 U.S.App.D.C. 350, 525 F.2d 567 (1975) *cert. denied*, 424 U.S. 933, 96 S.Ct. 1147, 1148, 47 L.Ed.2d 341 (1976), and cases cited at Footnote 28; *Nixon v. Administrator of General Services*, 408 F.Supp. 321, 367 (D.D.C.1975). We follow this course.

## II. THE REQUIREMENTS OF DUE PROCESS

Petitioners do not assert that an opportunity for oral presentation of views is required by the notice-and-comment rulemaking provision of the Administrative Procedure Act;[5] nor do they contend that the APA's on-the-record rulemaking sections are applicable.[6] Instead they argue that

Nor do we think that this change has rendered the case *moot*. Appellants have consistently urged the unconstitutionality of the refusal to provide oral hearings for parole guideline promulgation. The new Act works no change in the rulemaking procedures adopted by the Parole Board since the first appeal in this case, while it makes clear that the Commission has a duty to promulgate regulations governing parole decisionmaking. The Parole Commission has proposed regulations that in effect modify rather than revoke the regulations challenged in this appeal; in commenting on these regulations, the appellants will suffer from the same claimed disability under the statute as currently written as they did under the old statute. See 41 Fed.Reg. 19326 (5/12/76). Unlike the fact situation in *Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972), the controversy about oral hearings is a live one, and the change in statutory authority consequently does not moot the case. See *Brockington v. Rhodes*, 396 U.S. 41, 43, 90 S.Ct. 206, 24 L.Ed.2d 209 (1969).

3. Appellees phrase this argument in terms of standing as well as mootness. There is no question, however, that plaintiffs had an adverse interest they sought to protect at the time this suit was initiated. Whether that interest continues to support adversary action is more

properly addressed under the rubric of mootness.

4. Respondents seek to distinguish *Ramer* in part on the ground that the parole rules proposed by the Parole Board would not in any case apply to these appellants because by their terms the rules are not meant to apply to prisoners whose parole or release has been revoked. However, the proposed rules are not graven in stone, and comments on that limitation could cause the Board to change its mind.

5. Notice and comment procedures are set out in the APA, 5 U.S.C. § 553(b)–(e) (1970). Typically an agency will formulate a proposed regulation, then publish it in a notice in the Federal Register inviting comments from interested parties. After the agency has considered the comments, it either reformulates the regulation in light of the comments or adopts the proposed regulation as its final decision. Finally, the adopted rules are published along with a statement of their basis and purpose.

6. Adjudicatory hearings and formal rulemaking proceedings conducted under 5 U.S.C. §§ 556 and 557, approximate the procedure of a civil trial. However, the right of cross-examination is limited to that "required for a full and true

due process here requires procedures in addition to those mandated by statute, and that the specific procedure required is an opportunity for prisoners to comment orally on the Board's proposed rules. Petitioners suggest that this be handled by holding hearings at three federal prison facilities having differing degrees of security at which a transcript would be kept and at which at least one member of the Board would hear oral comments.

Plaintiffs base their due process claim on the assertion that the proposed parole guidelines mechanically rely on factors determinable as prisoners begin to serve their sentence (*e. g.* offense severity, prior convictions, prior parole history), and that in effect the proposed rules adjudicate each present and future prisoner's eligibility for parole well in advance of individual parole decisions. Thus petitioners' urge that the prisoners' only real chance for meaningful input into the process controlling their gaining of "conditional liberty" [7] must come while the rules are being formulated. In their view, oral comment is necessary to protect the prisoners' right to a "meaningful opportunity to be heard" [8] because the general prison population lacks the skills necessary for effective written communication.

Although informal rulemaking does not necessarily inflict "grievous loss" [9] on individuals, its results do sufficiently impinge on their lives and rights to require some conformance with notions of due process.[10] A reasonable balance must be struck between fairness and efficiency. Plaintiffs assert that the balance struck by § 553 of the APA is unreasonable in its application to the special situation of prisoners whose access to parole is at stake.[11] Though the district court rejected plaintiff's constitutional contention, it implicitly recognized that prisoners are subject to some disabilities in notice and comment rulemaking proceedings by ordering that the Board post special notices of the rulemaking proceeding in the prisons in addition to publishing notice in the Federal Register as the APA requires.

To evaluate appellants' contention that due process or fairness also requires "some kind" [12] of oral hearing, we "must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria and Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). We do not, however, write on a clean slate in evaluating the

disclosure of the facts." 5 U.S.C. § 556(d) (1970). In formal rulemaking, all or part of the evidence can be submitted in written form if the parties will not be prejudiced.

7. *Wolff v. McDonnell,* 418 U.S. 539, 560, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), *citing Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

8. *See Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914).

9. *Joint Anti-Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951). *See also Mathews v. Eldridge,* 424 U.S. 319, 341–44, 96 S.Ct. 893, 906–07, 47 L.Ed.2d 18 (1976).

10. For proposition that due process attaches to issuance of administrative regulations, *see, e. g., Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944), *Bowles v. Will-*

*ingham,* 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944), *Opp Cotton Mills v. Administrator of Wage & Hour Div.,* 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624 (1941). *See also* Wright, *The Courts and the Rulemaking Process: The Limits of Judicial Review,* 59 Corn.L.R. 375, 386 (1974).

11. This court has held that the due process clause applies to prisoners whose applications for parole have been denied. *See Childs v. U. S. Board of Parole,* 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974). *See also Bradford v. Weinstein,* 519 F.2d 728 (4th Cir. 1974), vacated as moot 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). *But see, e. g., Menechino v. Oswald,* 430 F.2d 403 (2d Cir. 1970), *cert. denied,* 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971).

12. *See* Friendly, *'Some Kind of Hearing',* 123 U.Pa.L.Rev. 1267 (1975), *citing Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

conflicting governmental and private interests in this case. Other cases have considered the necessity of providing an oral hearing in the context of informal rulemaking, and it is to those cases we turn.

### A. The Sufficiency of Notice and Comment Rulemaking Procedures

When not bounded by statutory procedural requirements, the Supreme Court has consistently been willing to assume that due process does not require any hearing or participation in "legislative" decisionmaking other than that afforded by judicial review after rule promulgation. *See Bowles v. Willingham,* 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944); *Bi-Metallic Investment Co. v. State Board of Equalization,* 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915).[13] In 1949, the Supreme Court rejected a Court of Appeals constitutional holding requiring oral argument on all questions of law in administrative adjudicative proceedings. *FCC v. WJR,* 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949). The Court emphasized Congressional control of administrative procedures and the availability of judicial review in reaching its result.[14] In *Bi-Metallic, supra,* the Court upheld a general tax assessment increase against property in Denver County against the argument that such a change could not be made without a hearing.

Those decisions were relied on in *United States v. Florida East Coast Railway,* 410 U.S. 224, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973), which read an Interstate Commerce Commission-administered statutory "hearing"[15] provision as requiring nothing more than notice and written comment when the proposed agency action, though similar to "adjudicative" ratemaking,[16] fell within the APA's rulemaking definition.[17] The *Florida East Coast* decision implicitly indicates that for "legislative-type"[18] rulemaking, notice and written comment procedures comport with due process.[19] The dividing line for additional procedures relied on by the Court is the "recognized distinction in administrative law between proceedings for the purpose of promulgating policy-type rules or standards, on the one hand, and proceedings designed to adjudicate disputed facts in particular cases on the other." 410 U.S. at 245–46, 93 S.Ct. at 821. Due process requirements for more formal procedures will apparently overrule deference to Congressional notice and comment standards only if an effort is "made to single out any particular [party] for special

---

**13.** *See also Morton v. Ruiz,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974), where an agency was held to its regulation voluntarily binding itself to APA procedures.

**14.** The Court reasoned: "Certainly the Constitution does not require oral argument in all cases where only insubstantial or frivolous questions of law, or indeed even substantial ones, are raised. Equally certainly it has left wide discretion to Congress in creating the procedures to be followed in both administrative and judicial proceedings, as well as in their conjunction . . . [To follow the Court of Appeals ruling] would do violence not only to our former decisions but also, we think, to the constitutional power of Congress to devise differing administrative and legal procedures appropriate for the disposition of issues affecting interests widely varying in kind." 337 U.S. at 276, 69 S.Ct. at 1103 (1949).

**15.** 49 U.S.C. § 1(14)(a) (1970).

**16.** The *Florida East Coast* opinion thus extended *United States v. Allegheny-Ludlum Steel Corp.,* 406 U.S. 742, 92 S.Ct. 1941, 32 L.Ed.2d 453 (1972), which held that § 553 notice and comment rulemaking applied to wholly legislative rulemaking proceedings.

**17.** 5 U.S.C. § 551(4) (1970) provides:

"rule" means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing . . .

**18.** 410 U.S. at 246, 93 S.Ct. 810.

**19.** See Friendly, *supra* note 12, at 1307; Wright, *supra* note 10. Note that the Court relied on prior decisions phrased in terms of due process or general principles of administrative law.

consideration based on [his] own peculiar circumstances." 410 U.S. at 245–46, 93 S.Ct. at 821.

### B. *Application to this Case*

In this case, there is no singling out of a particular person in the light of his circumstances. Petitioners urge that the rules' effect is to adjudicate in advance each prisoner's right to parole. However, policy rules often have the effect of making individual outcomes more predictable. Petitioners' contention rests on the assertion that the prisoner's interest in parole standards requires a due process result different from that applicable when the property interests of regulated firms are at stake.

There is a tension between the permissive procedural rulings in the informal rulemaking context and the strict procedural requirements that attach when individual deprivations of liberty or property are at stake. Petitioners rely on such cases as *Goldberg v. Kelly*[20] and *Morrissey v. Brewer*[21] for the proposition that the interest in gaining conditional liberty is so great, and the proposed regulations are so conclusive, that some kind of oral hearing is a prerequisite to their promulgation.

In the first place, the proposed rules do not conclusively establish parole rights for prisoners. They specifically provide for modification according to individual circumstances. They thus do not work the direct effect on petitioners' liberty that parole revocation or even good time deprivation does.[22]

Undeniably, petitioners have a substantial interest in the policies governing parole decisions. However, the courts have applied the principle of a notice-and-comment procedure, even when the rules have defined substantial individual rights. *See, e. g., O'Donnell v. Shaffer,* 160 U.S.App.

D.C. 266, 491 F.2d 59, 62 (1974); *Air Line Pilots Ass'n v. Quesada,* 276 F.2d 892 (2d Cir. 1960) (loss of pilot license at age 60); *Bi-Metallic, supra* (tax assessment rates). The general principle that notice and comment rulemaking is constitutionally sufficient for policy decisions is applicable, at least in the absence of extraordinary circumstances mandating an exception. In the present "prisoner's rights" case the general notice-and-comment principle is supported by a normal governmental interest in efficient decisionmaking and buttressed by its special interest in avoiding disruption of a "closed, tightly controlled [prison] environment." *Wolff v. McDonnell,* 418 U.S. 539, 561, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Considerations of prison routine are certainly not conclusive, but they reflect an interest that can properly be given weight. *See Wolff, supra.*

Petitioners think themselves within the protection of the *Goldberg/Morrissey* line of cases because those cases recognized the importance of tailoring a hearing "to the capacities and circumstances of those who are to be heard." *Goldberg,* 397 U.S. at 269, 90 S.Ct. at 1021. Those cases involved individual determinations requiring flexibility in presentation and involving the issues of credibility and veracity. In this case, the parole guidelines involve policy questions rather than accurate development of a particular factual situation to which policy standards must be properly applied. *See Goldberg,* 397 U.S. at 268, 90 S.Ct. 1011. It may be that prisoners may lack the writing skills necessary for effective communication. Many indeed may also lack the skills and focus necessary for effective oral presentation of views. However, an exception along these lines would be far reaching and broad, and would apply to all kinds of rules, *e. g.* governing food stamps, welfare bene-

---

**20.** 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

**21.** 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

**22.** *Cf. Friendly, supra,* at 1295 who suggests that a distinction in weight to be attached to

government action be drawn between cases in which government is seeking to take action against the citizen from those in which it is simply denying a citizen's request. *See also, Morrissey v. Brewer,* 408 U.S. at 481–82, 92 S.Ct. 2593; *Wolff v. McDonnell,* 418 U.S. at 561, 94 S.Ct. 2963.

fits, grant programs, social security matters, to start with, and doubtless many others. We have recently declined to take that approach in *Thompson v. Washington*,[23] a case involving rent increases in public housing where the general rule governing increases would have a particularized, predictable impact on each tenant's rent obligations in much the same manner that the parole guidelines are asserted to predetermine prisoners' rights in this case. We interpreted the governing statutes expansively in the light of constitutional due process considerations, and found them to require a written notice and comment opportunity to participate in the decision process. But we held that oral hearings were not compelled.

At least for the prisoners' rights involved here, providing the limited oral hearings proposed by petitioners would not remedy these disabilities; at best it would slightly broaden the comment base to include a few prisoners in three facilities willing to communicate their views verbally. There may be substantial advantages in adopting the procedures suggested by appellants since such oral hearings might serve to legitimate the parole rules in the eyes of prisoners, by giving at least some of them a more direct sense of participation in a policy process directly affecting their lives, and they could

be structured to minimize disruption possibilities. This may call for the broad perspective of the Attorney General or the Deputy Attorney General rather than any narrow approach by the Parole Board or Bureau of Prisoners. It is not, however, for judicial mandate. We cannot hold that the balancing of private and government interests in this case requires displacing the procedures provided by Congress for policy development.

▋ Plaintiffs also rely on cases decided by this Circuit suggesting or requiring oral presentations in rulemaking proceedings. For the most part, our decisions have not held oral presentations to be a condition of validity, but have called for them as a necessary adjunct to meaningful judicial review of highly technical issues.[24] In one instance, we found elements in the administrative procedure that led to a requirement of oral presentation to responsible officials, in order that the administrator would adequately exercise the decisionmaking discretion contemplated by the particular statute, by considering all relevant factors.[25] Although we have recognized that provision of oral hearings may be wise in some instances, we have never held that due process requires oral presentation of views as a matter of course. This case presents no

---

**23.** 162 U.S.App.D.C. 39, 497 F.2d 626 (1973). *See also Marshall v. Lynn,* 162 U.S.App.D.C. 56, 497 F.2d 643 (1973), *cert. denied,* 419 U.S. 970, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974) and *Tenants' Council of Tiber Island-Carrollsburg Square v. Lynn,* 162 U.S.App.D.C. 61, 497 F.2d 648 (1973), *cert. denied,* 419 U.S. 970, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974). Even these cases may be in the avant garde of this area of the law. *See, e. g., Langevin v. Chenango Court,* 447 F.2d 296 (2d Cir. 1971); *Harlib v. Lynn,* 511 F.2d 51 (7th Cir. 1975); *Geneva Tower Tenants Organization v. Federated Mortgage Investors,* 504 F.2d 483 (9th Cir. 1974). *But see Paulsen v. Coachlight Apartments Co.,* 507 F.2d 401 (6th Cir. 1974).

**24.** *See International Harvester v. Ruckelshaus,* 155 U.S.App.D.C. 411, 478 F.2d 615, 649 (1973): "The procedures followed in this case . . . have resulted in a record that leaves this court uncertain, at a minimum, whether the essentials of the intention of Congress were achieved. This requires a remand whereby the

record as made will be supplemented by further proceedings." *See also Mobil Oil Corp. v. FPC,* 157 U.S.App.D.C. 235, 483 F.2d 1238 (1973); *American Airlines v. CAB,* 123 U.S.App.D.C. 310, 359 F.2d 624 (en banc), *cert. denied,* 385 U.S. 843, 87 S.Ct. 73, 17 L.Ed.2d 75 (1966); *Kennecott Copper Corp. v. EPA,* 149 U.S.App.D.C. 231, 462 F.2d 846 (1972).

In *Portland Cement Assoc. v. Ruckelshaus,* 158 U.S.App.D.C. 308, 486 F.2d 375 (1973), *cert. denied,* 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974) "the court remanded for further proceedings. It refused to vacate and set aside the agency's action, not withstanding motions filed for that specific purpose. This was made a ground for seeking certiorari." *Ethyl Corp. v. EPA,* 176 U.S.App.D.C. 373, 541 F.2d 1 (en banc, No. 73–2205, etc., Mar. 19, 1976) (Leventhal, J., concurring) at 3, n.4.

*Cf. Ethyl Corp. v. EPA, infra* (notice and comment rulemaking sufficient).

**25.** *Walter Holm Co. v. Hardin,* 145 U.S.App.D.C. 347, 449 F.2d 1009 (1971).

occasion to expand on our previous holdings.

*Affirmed.*