**Frank SICURO et al., Plaintiffs,**

v.

**Carla HILLS, as Secretary of the United States Department of Housing and Urban Development, et al., Defendants.**

**No. CV 75–3439–JWC.**

United States District Court,
C. D. California.

May 17, 1976.

4.  *Id.*

**554**

Aviva K. Bobb, San Fernando Valley Neighborhood Legal Services, Inc., Pacoima, Cal., and Daniel M. Luevano, Rosalyn M. Chapman, John E. McDermott, Patricia M. Tenoso, Western Center on Law & Poverty, Los Angeles, Cal., for plaintiffs.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civ. Div., and Stephen D. Petersen, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

OPINION

CURTIS, District Judge.

In this class action, plaintiffs seek to compel the Secretary of Housing and Urban Development and certain officials thereof (hereinafter HUD) to implement the rent supplement provisions of the Housing and Urban Development Act and the operating subsidy provisions of the National Housing Act, as amended respectively by the Housing and Urban Development Act of 1970 and the Housing and Community Development Act of 1974, 12 U.S.C. § 1701s and 12 U.S.C. § 1715z–1(f)(3) and (g).

The facts of this case are not in dispute. Plaintiffs are all tenants of Woodland Terrace Apartments, a federally subsidized housing project. The owners of this housing project requested that they be allowed to increase the plaintiffs' rent because, among other reasons, their utility and property tax expenses were increasing. HUD granted this request and the plaintiffs were notified of the proposed rent increase.

Plaintiffs have never enjoyed the benefits of the rent supplement payments provided by 12 U.S.C. § 1701s nor have they received the benefits of the operating subsidy provided by 12 U.S.C. § 1715z–1(f)(3) and (g). Indeed, HUD has not even established the initial operating expense level for the Woodland Terrace Apartments.

Plaintiffs brought this suit, and cross motions for summary judgment were filed. Jurisdiction is invoked pursuant to 28 U.S.C. § 1361. *See, e. g., Elliott v. Weinburger,* No. 74–1611 (9th Cir. Oct. 1, 1975).

12 U.S.C. § 1701s(a) establishes the rent supplement and provides in pertinent part that:

"The Secretary of Housing and Urban Development (hereinafter referred to as the "Secretary") is authorized to make, and contract to make, annual payments to a 'housing owner' on behalf of 'qualified tenants', as those terms are defined herein, in such amounts and under such circumstances as are prescribed in or pursuant to this section."

12 U.S.C. § 1701s(e)(1) provides in pertinent part that:

"For purposes of carrying out the provisions of this section, the Secretary shall establish criteria and procedures for determining the eligibility of occupants and rental charges, including criteria and procedures with respect to periodic review of tenant incomes and periodic adjustment of rental charges."

The mandatory provisions of 12 U.S.C. § 1701s(e)(1), when read in conjunction with the term "authorized" contained in 12 U.S.C. § 1701s(a), strongly indicate a congressional intent that the rent supplement payments are not to be discretionary within HUD. HUD seems to have recognized that the implementation of the rent supplement payments was mandatory and has established regulations and issued handbooks to implement the program and disburse the necessary funds. The implementing regulations, 24 C.F.R. § 215 *et seq.*, define eligible projects, eligible housing owners, qualified tenants, and maximum amounts of rent supplement payments for individual tenants and housing projects.

HUD's only viable opposing argument is that Public Law 94–116 expressly bars payment of rent supplements to any eligible housing project not already receiving such payments on October 17, 1975.

Public Law 94–116, an appropriations Act, simply increased by $20,000,000 the maximum payments allowable under the

rent supplement statute, 12 U.S.C. § 1701s.[1] HUD relies on certain language contained in the House Report to Public Law 94–116 [2] to contend that the $20,000,000 in additional funds is available only to those projects already receiving rent supplement payments, thus excluding those existing, eligible housing projects not receiving rent supplement payments as of October 17, 1975.

However, a review of the ever changing National Housing Act, the rent supplement and deep subsidy provisions contained therein, Public Law 94–116 and the House and Senate Reports thereto, indicates the prohibition against new rent supplement housing projects contained in the House Report to Public Law 94–116 should be construed to mean only that Congress intended that no new rent supplement housing projects would be constructed and not that the existing, eligible housing projects should be denied rent supplement payments.

In response to the changing needs of the public and the changing philosophy of the Congress in meeting those needs, the National Housing Act has been modified several times in the last few years. Under the Housing and Community Development Act of 1974, Congress altered the form in which it would provide special subsidies to very low income persons by making deep subsidy payments instead of rent supplements payments.[3]

During the transition between changes, Congress intended that eligible new federally subsidized housing projects would be funded under the deep subsidy provisions as opposed to the rent supplement provisions [4] and not that already existing, eligible federally subsidized housing projects would be denied rent supplement benefits.[5]

Moreover, the very House Report that HUD relies on to support its position that the $20,000,000 appropriated by Public Law 94–116 is not available to existing, eligible housing projects which are not currently receiving rent supplement payments evinces the growing concern of Congress that these existing, eligible housing projects would receive some sort of low income subsidy.[6]

It becomes quite evident, therefore, that Congress intended that eligible housing projects be given some sort of low income subsidy and that the money appropriated by Public Law 94–116 be used, in part, for rent

1. Public Law No. 94–116 (October 17, 1975) provides in pertinent part that:

   "The limitation otherwise applicable to the maximum payments that may be required in any fiscal year by all contracts entered into under section 101 of the Housing and Urban Development Act of 1965 (12 U.S.C. § 1701s) is increased by $20,000,000."

2. H.R.Rep. No. 94–313, 94th Cong., 1st Sess. 7 (1975) provides in pertinent part that:

   "Therefore, $20,000,000 of annual rent supplement contract authority has been approved in the bill. The availability of these funds should avoid cancelling valid reservations already committed under Section 236 projects. However, the Committee wants to make clear that the release of these rent supplement funds is *only* available for meeting legitimate cost increases occurring from inflationary pressures. None of this contract authority is available for any new rent supplement units or a reimplementation of the program." (Emphasis in the original).

3. Compare 12 U.S.C. § 1715z–1(f)(2) with 12 U.S.C. § 1701s.

4. *See* note 2, *supra*.

5. S.Rep. No. 94–326, 94th Cong., 1st Sess. 16 (1975) provides in pertinent part that:

   "The Department informed the Committee that under some circumstances the funds would be used to increase the number of units receiving [rent supplement] assistance in existing projects, where possible under the law and where such increases are necessary to assure the economic viability of the project."

6. H.R.Rep. No. 94–313, 94th Cong., 1st Sess. 6 (1975) provides in pertinent part that:

   ". . . [T]here is currently no previously released contract authority available under the rent supplement program although the Department is under continuing obligation to increase unit payments as legitimate cost increases occur. As a stop gap measure, HUD is recapturing approximately $15 million of rent supplement contract authority from Section 236 piggy-back projects reserved but not yet under contract. To make up for the loss of rent supplement authority these Section 236 projects are being given a 'deep subsidy' pursuant to Section 212 of the Housing and Community Development Act of 1974."

supplement payments to already existing, eligible housing projects as of October 17, 1975, which are not receiving either the rent supplement or deep subsidy payments.

Accordingly, the plaintiffs' motion for summary judgment with regard to the rent supplement payments is granted.

Turning to the operating subsidy issue, this court has decided *Abrams v. Hills*, 415 F.Supp. 550 (C.D.Cal.1976). For the reason stated in that opinion, the plaintiffs' motion for summary judgment on the operating subsidy issue is granted.