Ann MEDLIN, et al.

v.

FICKLING AND WALKER DEVELOPMENT COMPANY, INC., et al.

Civ. A. No. C-75-823-A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 24, 1976.

Frances A. Zwenig, Atlanta, Ga., for plaintiffs.

Tommy Day Wilcox, James & Shipp, Macon, Ga., for Fichling & Walker and Letha Carter.

Richard A. Horder, Asst. U.S. Atty., Dana E. McDonald, Atty., U.S. Dept. of Housing & Urban Development, Atlanta, Ga., for all other defendants.

## ORDER

HENDERSON, District Judge.

This is an action for injunctive and declaratory relief brought pursuant to the provisions of the National Housing Act, 12 U.S.C. §§ 1701 et seq., as amended. Presently pending are the motion for partial summary judgment of the defendants, Department of Housing and Urban Development (hereinafter referred to as "HUD"), the Secretary, Carla Hills, and the regional director, W. A. Hartman, and the plaintiffs' cross-motion.[1]

The plaintiffs comprise a class of all past, present and future tenants of the Keystone Apartments, a privately owned housing complex administered as a "Section 236" project. In March, 1974 Keystone requested, and in April HUD approved, a rental increase, effective June 1, 1974.[2] The plaintiffs first became aware of this adjustment after it had been approved by HUD and contend that lack of prior notice and an opportunity to contest the proposed increase violated both their statutory and constitutional rights.

Section 236 was made a part of the National Housing Act[3] to encourage the private construction and operation of low-cost

---

**1.** The defendants' motion also attacked Count Twelve, to which the plaintiffs did not respond. It has since been dismissed by stipulation.

**2.** Keystone actually sought permission for a decrease in rent and transfer of responsibility for electrical service to the individual tenants. This type of change is called a "passthrough" and, in effect, can operate as a rental increase. See *Fleming v. R. I. G. H. T. Corp.*, Civ. No. 73–2559 (E.D.Pa.1974), aff'd, 511 F.2d 1393

(3rd Cir. 1975). It will be assumed, for purposes of this order only, that the June 1st "passthrough" was equivalent to an increase in rent.

**3.** This section, codified at 12 U.S.C. § 1715z–1, was added to this statutory scheme by the Housing and Urban Development Act of 1968. 82 Stat. 498 (1968).

housing by furnishing federal mortgage insurance and interest-reducing mortgage payments. In return, the federal government exercises substantial regulatory control over all aspects of such a development, see 24 C.F.R. §§ 236.1 *et seq.*, and the Keystone Apartments were managed in conformity with a regulatory agreement executed in February, 1971.

This contract provided, *inter alia*, that rent would include all utilities except telephone service. In order to obtain modifications which, in the absence of governmental regulation, could have been effected unilaterally in new and renewal leases, Keystone needed a change in its regulatory agreement. 12 U.S.C. § 1715z–1(e); HUD Handbook No. 4351.1 (July, 1971).

■ There is no question that the pervasive governmental control of Section 236 projects invokes the protection of the Fifth Amendment, which, by its nature, restricts only the actions of the federal government. See, *e. g., Hahn v. Gottlieb*, 430 F.2d 1243 (1st Cir. 1970). Whether due process applies in this context, however, necessitates a further determination that the interest asserted by the plaintiffs here is significantly related to "property."

They suggest that their concern in low-cost housing is of sufficient dimension to warrant constitutional protection.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to hearing to provide an opportunity for a person to vindicate those claims.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

See *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

The court found a "property interest" in *Bloodworth v. Oxford Village Townhouses, Inc.*, 377 F.Supp. 709, 717 (N.D.Ga.1974) (Judge Freeman).

> In the present case, plaintiffs would appear to have an objectively justified expectation, grounded firmly in Section 236, that they will continue to receive the benefits of low-cost housing. If low-cost housing is not a major purpose of Section 236, then the existence of federal subsidies and supervision of the project, including prior HUD approval of all carrying charge increases, makes no sense whatsoever. Therefore we conclude that a property interest deserving of due process protection exists in this action.

Accord, *Dew v. McLendon Gardens Assoc.*, 394 F.Supp. 1223 (N.D.Ga.1975) (Judge Hill).

■ Neither the National Housing Act in general nor Section 236 in particular provides any guarantee of low-cost housing, recognition of that interest or any procedural rights designed to protect it. As remedial legislation, they contain merely a congressional directive for corrective measures. *Cf. Tenants' Council v. Lynn*, 162 U.S.App.D.C. 61, 497 F.2d 648 (1973). This stated goal of affording safe and accessible low-cost housing is not synonymous with the purported right asserted by the plaintiffs here, an entitlement to fixed rent shelter.[4]

Although the Court of Appeals for the Fifth Circuit has not undertaken to resolve the constitutional question, five other circuits have either expressly or impliedly rejected the plaintiffs' position. *Harlib v. Lynn*, 511 F.2d 51 (7th Cir. 1975); *Paulsen v. Coachlight Apts. Co.*, 507 F.2d 401 (6th Cir. 1975); *Peoples Rights Org. v. Bethlehem Assoc.*, 487 F.2d 1395 (3rd Cir. 1973),

---

4. If the interest urged by the plaintiffs were defined as "low-cost" housing, this would result in the anomalous situation where only "substantial," as opposed to "insignificant," rent increases merit constitutional protection. The practical problems inherent in the application of a "substantial-insignificant" classification are obvious.

*aff'g without opinion,* 356 F.Supp. 407 (E.D. Pa.1973); *Langevin v. Chenango Court, Inc.,* 447 F.2d 296 (2nd Cir. 1971); *Hahn v. Gottlieb, supra.*

In those situations where due process safeguards have been imposed, their purpose was to assure the fundamental fairness of the fact-finding process leading to an adjudicative decision. Compare *Langevin v. Chenango Court, Inc., supra,* with *Hahn v. Gottlieb, supra.* Rent adjustment decisions, however, are not subject to judicial review.

■ There are no fixed standards to guide the decision-making process leading to rent modifications. Such judgments, by their nature, require a balancing of economic interests in each case, see *Dew v. McLendon Gardens Assoc., supra,* which the courts are ill-equipped to make. As a direct consequence, error, even palpable error, in such an administrative decision does not authorize judicial intervention.[5] See *Langevin v. Chenango Court, Inc., supra; Hahn v. Gottlieb, supra.*

> Due process is a practical concept; prior notice and hearing are not required when a hearing would be pointless. The purpose of a prior evidentiary hearing in the entitlement context is to resolve those questions of fact upon which a controversy turns; if there are no material issues of fact to be resolved, a prior evidentiary hearing to determine the existence of facts is meaningless, and the very purpose of requiring procedural due process evaporates. . . . The substantive law from which the benefit springs of course determines what factual issues are mate-

rial. . . . For a fact to be material, there must be a legal requirement that the benefit be conferred if the fact is established. Unless such a legal requirement exists, there is nothing meaningful for an evidentiary hearing to resolve. Unless the law requires that consequences follow from the proof of a fact, that fact is immaterial to resolution of a conflict; whether the fact is proven or disproven at the hearing has no necessary impact on the outcome of the controversy.

*Geneva Towers Tenants Org. v. Federated Mtg. Investors,* 504 F.2d 483, 495 (9th Cir. 1974) (Hufstedler, J., dissenting).

■ In this sense, therefore, there is no interest to which due process protections can attach. Not only does the National Housing Act set forth no explicit recognition of a tenant benefit, it also leaves the achievement of low-cost housing to the discretionary implementation of HUD. Given this framework, requiring prior notice and an opportunity to contest a proposed rental increase or "passthrough" may constitute a preferable policy[6] but it finds no foundation in the Constitution.

It follows, then, that there are no procedural safeguards for Section 236 tenants which can reasonably be implied in this statute.[7] See *Harlib v. Lynn, supra; Langevin v. Chenango Court, Inc., supra; Hahn v. Gottlieb, supra.* But see *Paulsen v. Coachlight Apts. Co., supra; Marshall v. Lynn,* 162 U.S.App.D.C. 56, 497 F.2d 643 (1973).

Accordingly, the plaintiffs' motion for summary judgment is denied and the de-

---

5. There may be extraordinary circumstances where the courts are compelled to review a rent decision. See *Langevin v. Chenango Court, Inc., supra.* Even then, however, the desirability of, or factual support for, such a determination would be beyond the scope of such examination.

6. The pre-decision procedures sought in this case and approved in *Bloodworth* were implemented by HUD in a regulation adopted subsequent to the "passthrough" here. 24 C.F.R. §§ 401.1 et seq. (1976).

7. Any failure of the defendants to comply with Section 212 of the Housing and Community Development Act of 1974, 88 Stat. 672 (1974), which amended Section 236, is immaterial because the effective date of this section was after the alleged statutory violation. Moreover, even if liability could be predicated upon the infraction of internal procedures adopted by HUD to process rental increases and "passthrough" requests, the affidavit of Henry Fillmer, Financial Analyst, Program Support Branch, Community Planning and Development Division of HUD, rebuts the suggestion that these regulations were disregarded.

815

fendants' motion for summary judgment is granted. Counts Ten and Eleven of the complaint are dismissed.