Rita WEEMS, on her own behalf and on
behalf of all others similarly
situated, Plaintiff,

v.

Samuel PIERCE, et al., Defendants.

No. 81–3021.

United States District Court,
C. D. Illinois.

March 24, 1982.

Victoria S. Metcalf, Land of Lincoln Legal Assistance Foundation, Inc., Springfield, Ill., Lois J. Wood, Land of Lincoln Legal Assistance Foundation, Inc., E. St. Louis, Ill., for plaintiff.

Robert N. Ungerleider, Chicago, Ill., for Southwest Dev. Co.

W. Edward Webb, Springfield, Ill., for Southwest Development Co., A. D. Van Meter, Jr., and Donald Hoaglund.

Alan S. Ganz and Marc A. Primack, Chicago, Ill., for A. D. Van Meter, Jr. and Donald Hoaglund.

Richard J. Flando, Dist. Counsel, and Robert Leong, Atty., Dept. of Housing and Urban Development, Chicago, Ill., L. Lee Smith, Asst. U. S. Atty., Peoria, Ill., for Samuel Pierce and Elmer Binford.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

Plaintiff, a tenant, seeks injunctive and declaratory relief to compel defendants to implement and administer the Rent Supplement Program, 12 U.S.C. § 1701s, at Cedar Point Apartments. Cedar Point Apartments is a housing development subsidized under section 236 of the National Housing Act. 12 U.S.C. § 1715z–1. Alternatively, plaintiff seeks injunctive and declaratory relief to compel the Department of Housing and Urban Development (HUD) to implement an alternative program of rent reduction, if HUD determines that such program would provide greater benefits than the Rent Supplement Program. *E.g.*, 12 U.S.C. § 1715z–1(f)(2) and 42 U.S.C. § 1437f.

Further, plaintiff seeks an order compelling Southwest Development Company (Southwest) and certain officers of the Illinois Housing Development Authority (HDA) to contract with HUD to provide rent supplement or alternative rent subsidy payments on behalf of qualified tenants at Cedar Point.[1]

The section 236 interest reduction contract for Cedar Point was executed on February 27, 1973, pursuant to a preliminary reservation of contract authority dated August 7, 1972. In January 1973, one month prior to the execution of the Cedar Point contract, HUD suspended section 236 and the Rent Supplement Program, 12 U.S.C. § 1701s, as well as other federal housing programs. *See Commonwealth of Pennsylvania v. Lynn*, 501 F.2d 848, 851 n.6 (D.C. Cir.1974). Apparently, sections 1701s and

---

1. Pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure, the parties have stipulated to the dismissal of the claims of the following individual plaintiffs: Leo Spicer, Mary Spicer, and Virginia Bland.

Plaintiff has filed a Motion to Maintain Class Action, which has not been acted upon by the court.

1715z–1 are still suspended as concerns contracts for section 236 interest reduction after 1973. *Allen v. Pierce*, No. A–79–CA–279 (W.D.Tex., Oct. 15, 1981).

The focus of plaintiff's position is the contention that HUD has a mandatory duty under the National Housing Act of 1934, as amended, 12 U.S.C. § 1701 et seq., and the Housing and Urban Development Act of 1965, 12 U.S.C. § 1701s, to implement the Rent Supplement Program, or an alternative program, on behalf of eligible tenants at Cedar Point Apartments. The defendants deny that such a duty exists as pertains to them, respectively. The matter is before the court on cross-motions for summary judgment.

It appears that if the alternative programs specifically discussed by the parties are available or otherwise appropriate to the situation at Cedar Point, the plaintiff's case rises or falls on the single issue of whether assistance under any of the programs discussed is mandated. Thus, the court addresses the alternative programs first.

### 12 U.S.C. § 1715z–1(f)(2)

█ The court is satisfied that the "deep subsidy" (Rental Assistance Payments) program established in section 1715z–1(f)(2) is unavailable to plaintiff, as a tenant at Cedar Point, on the basis of the facts. That section specifically provides that the "deep subsidy" program is available to "any project made subject to a contract under this section after August 22, 1974 . . . ." 12 U.S.C. § 1715z–1(f)(2). Plaintiff concedes that the Cedar Point Apartments were constructed prior to August 22, 1974. It is clear that, initially at least, section 1715z–1(f)(2) could only be implemented for projects constructed after August 22, 1974.[2]

*Abrams v. Hills*, 547 F.2d 1062, 1067 (9th Cir. 1976); *Sicuro v. Hills*, 415 F.Supp. 553 (C.D.Cal.1976), *rev'd on other grounds*, 597 F.2d 1235 (1979).

In 1979, HUD amended its regulations and made the deep subsidy payments available to section 236 projects that were completed prior to the August 1974 date. 24 C.F.R. § 236.701 (1981). While that regulation says that the "Secretary shall enter into Rental Assistance Contracts" with such projects, it does so only when those projects "are reprocessed with rental assistance pursuant to an Agreement between the sponsor, the State or local agency providing additional aid to the project, and the Secretary." 24 C.F.R. § 236.701 (1981). The court has seen no indication that Cedar Point has been "reprocessed with rental assistance pursuant to an Agreement" between the relevant parties. Further, the preamble to the regulation clearly states that Rental Assistance Payments for older section 236 projects was "at the discretion of the sponsors, state or local agencies financing the projects and the Secretary." 44 F.R. 61177 (10/24/79).

Thus, while Cedar Point technically may be eligible for section 1715z–1(f)(2)[3] assistance, the court is unaware of any facts that warrant a conclusion that the defendants have abused their discretion in this regard. The court cannot avoid the conclusion that it has no basis in law under the facts of this case to require implementation of section 1715z–1(f)(2) at Cedar Point Apartments, as an alternative to section 1701s.

### 42 U.S.C. § 1437f

█ As was true in the discussion above of the deep subsidy payments, plaintiff does not contend that implementation of section 1437f is mandated. Rather, plaintiff con-

---

**2.** The "operating subsidy" provided for in section 1715z–1(f)(3) was available to both new and existing projects. *Abrams v. Hills*, 547 F.2d 1062, 1068 (9th Cir. 1976). Neither side has addressed the question of an operating subsidy at Cedar Point, and the court, therefore, will not address that question. It should be noted that the court does not understand the plaintiff to argue that the operating subsidy program is an alternative to section 1701s.

**3.** In support of her contention that Cedar Point is eligible for assistance under section 1715z–1(f)(2), plaintiff points to the fact that of the IHDA–financed section 236 projects, eleven participate in the deep subsidy program, ten receive rent supplement benefits, and eighteen receive no rental assistance. There is nothing but this recitation in the record concerning these other situations, and the court refuses to draw conclusions therefrom.

tends that section 1437 is one alternative to implementing a rent supplement program under 12 U.S.C. § 1701s. Thus, the court, for the purposes of this case, need only decide if section 1437f is a viable alternative to section 1701s.

Section 1437f provides, *inter alia*, as follows:

"For the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing, *assistance payments may be made with respect to existing*, newly constructed, and substantially rehabilitated housing in accordance with the provisions of this section. 42 U.S.C. § 1437f(a) (emphasis added).

In 1979, section 1701s was amended so that HUD has the authority to "convert" rent supplement contracts to programs receiving assistance under section 8 of the Housing Assistance Payments Program, codified at 42 U.S.C. § 1437f. 12 U.S.C. § 1701s(j). Since Cedar Point does not receive assistance under section 1701s, the court cannot compel a "conversion" from section 1701s to section 1437f.

■ Further, section 1437f is replete with references to "annual contributions contracts." Clearly, in this case no such contract exists. While it may be true that courts, under appropriate circumstances, may consider whether section 1437f has been complied with (*see Holbrook v. Pitt*, 479 F.Supp. 990 (E.D.Wis.1979), this court is loathe to order that parties enter into a contract when every indication points to the fact that the parties are either unwilling or unable to do so. It is not the role of the courts to write contracts for parties. The court has not been guided to any authority which would permit court-compelled implementation of section 1437f. While section 1437f appears to be an administrative alternative to section 1701s, this court will not order participation in section 1437f absent a clear showing that such action is somehow necessary.

### 12 U.S.C. § 1701s

The principal thrust of plaintiff's position is that by participating in section 236, 12 U.S.C. § 1715z–1, the defendants are mandated to implement the Rent Supplement Program, 12 U.S.C. § 1701s, or an alternative.

In the National Housing Act of 1949, Congress established the national housing goal of "the realization as soon as feasible of . . . a decent home and suitable living environment for every American family. . . ." 42 U.S.C. § 1441. This goal was reiterated in 1968. 12 U.S.C. § 1701t. In keeping with this objective, section 236 itself was enacted "for the purpose of reducing rentals for lower income families . . . ." 12 U.S.C. § 1715z–1(a). Additionally, the Housing and Urban Development Act of 1965 established a rent supplement program to further provide rental assistance for lower income tenants of subsidized projects. 12 U.S.C. §§ 1701s and 1701s(h)(1)(D).

■ It seems clear to the court that section 1701s establishes a duty on the part of HUD to make available rent supplement programs on a nationwide basis. However, this general obligation, clearly in furtherance of Congressional goals, does not answer the question of whether a particular project must be a part thereof. Initially, it must be noted that the court finds no explicit mandate of implementation of section 1701s (or any other program) at a given housing project merely because that project receives assistance under section 236. Thus, any duty to do so would have to come from a finding of Congressional intent to that end, as gleaned from the various federal housing statutes. This, of course, "is not a simple matter of tallying the 'shalls' and 'mays' . . . ." *Commonwealth of Pennsylvania v. Lynn*, 501 F.2d 848, 854 (D.C.Cir. 1974).

■■ Plaintiff relies heavily on *Sicuro v. Harris*, 597 F.2d 1235 (9th Cir. 1979), for the proposition that implementation of section 1701s, or an alternative, is mandatory. This court is not persuaded by plaintiff's reading of *Sicuro*, and disagrees with plaintiff's conclusion. In fact, the court does not read *Sicuro* to mandate rental assistance of

any form at Cedar Point. Rather, the court reads *Sicuro* merely to hold that the Secretary has "limited discretion to decide whether to make rent supplement payments . . . ." *Sicuro v. Harris*, 597 F.2d 1235, 1236 (9th Cir. 1979). The district court was reversed and the case remanded for the sole purpose of determining "whether the Secretary abused her discretion when she refused to implement the rent supplement program . . . ." *Id.* The court simply is not convinced that the defendants are under a duty to provide rent assistance at each and every project that has received the benefit of section 236. For example, HUD, by virtue of providing rental assistance, is not required to provide safe and decent housing under the theory of a warranty of habitability. *See Alexander v. Dept. of Housing and Urban Development*, 555 F.2d 166 (7th Cir. 1977); *Federal Property Management Corp. v. Harris*, 603 F.2d 1226 (6th Cir. 1979). The court finds itself asking how HUD has any more of a duty to provide rental assistance to particular projects than it does to guarantee that federally assisted housing is maintained in decent condition. *See Allen v. Pierce*, No. A–79–CA–279 (W.D.Texas, Oct. 15, 1981).

■■■ While HUD must act in a manner consistent with the national housing goals, *United States v. Winthrop Towers*, 628 F.2d 1028 (7th Cir. 1980), this court does not consider non-implementation of the Rent Supplement Program at one particular project inconsistent with that goal. The court must recognize that HUD has some discretion, albeit limited, in operating the various housing programs under its authority. *Sicuro v. Hills*, 415 F.Supp. 553 (C.D. Cal.1976), *rev'd*, 597 F.2d 1235 (1979); *Commonwealth of Pennsylvania v. Lynn*, 501 F.2d 848 (D.C.Cir.1974); *Alexander v. Dept. of Housing and Urban Development*, 555 F.2d 166 (7th Cir. 1977), *aff'd on other grounds*, 441 U.S. 39, 99 S.Ct. 1572, 60 L.Ed.2d 28 (1979). *Cf. United States v. Winthrop Towers*, 628 F.2d 1028 (7th Cir. 1980) (HUD has broad discretion). The court is not convinced that the defendants have abused the discretion allowed them. It is not without sympathy to plaintiff's

situation that the court reaches this conclusion. There just does not appear to be any requirement that projects assisted by section 236 must also receive rental assistance. In fact, the court notes that section 236 is itself a form of rental assistance. 12 U.S.C. § 1715z–1.

### 42 U.S.C. § 1983

The thrust of this argument is that IHDA and Southwest have a duty to apply for and implement a rent supplement program, or an alternative, at Cedar Point, and that by failing to do so, IHDA and Southwest have violated plaintiff's civil rights as protected under 42 U.S.C. § 1983.

■■ For there to have been a violation of section 1983, two elements must be present: (1) the conduct complained of must have been by a person acting under color of state law, and (2) the conduct deprived a person of rights, privileges and immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The court finds no constitutional right to low-income housing. Further, as indicated below, the court finds no violation of plaintiff's constitutional right to due process. Thus, the court is left to consider whether the actions of IHDA and Southwest were in violation of federal statutes. *See Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). For plaintiff to state a successful claim of statutory violation under section 1983, there must be a determination that (1) Congress, in enacting the statutes and their enforcement schemes, supplanted a private remedy, and (2) that the statutes relied on created "rights, privileges or immunities" within the scope of section 1983. *Middlesex City Sewer Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Perry v. Housing Authority of the City of Charleston*, 664 F.2d 1210, (4th Cir., 1981). The court finds no basis for a claim of statutory violation under section 1983. *See, e.g., Perry, supra; Grand Boulevard Improvement Ass'n v.*

*City of Chicago*, No. 80–C–4760, slip op. (N.D.Ill., Oct. 14, 1981).

IHDA is under a general obligation to act in a manner so as to assist in providing "decent, safe, and sanitary housing available at low and moderate rentals to persons and families of low and moderate income." Ill.Rev.Stat. ch. 67½, ¶¶ 303 and 312 (1979). It further appears that IHDA has, at the very least, attempted to do so. *See* note 3, *supra.* However, the court does not find an obligation in the statutes cited by plaintiff to provide, or seek to provide, rental assistance to each and every "low-income housing project" in Illinois.

### Due Process

There are no guarantees that the housing goals announced by Congress will be achieved. Additionally, the court does not find a "property interest in a benefit" based on a "legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Since this court has indicated that rent supplement is not a mandatory obligation on the part of HUD, the court is not now in a position to conclude that there is a statutory, constitutional or contractual basis for plaintiff to claim an entitlement to participation in a rental assistance program. Thus, a hearing and notice of the type contemplated by plaintiff would be pointless. *See, e.g., Davis v. Ball Memorial Hospital Ass'n*, 640 F.2d 30 (7th Cir. 1980); *Harlib v. Lynn*, 511 F.2d 51 (7th Cir. 1975); *Medlin v. Fickling & Walker Development, Inc.*, 420 F.Supp. 811 (N.D.Ga.1976).

Accordingly, IT IS ORDERED that plaintiff's motion for summary judgment is DENIED, that defendants' motions for summary judgment are ALLOWED, and that judgment shall enter in favor of the defendants.