Gloria CATON et al., Plaintiffs,

v.

Marion BARRY et al., Defendants.

Civ. A. No. 80–1584.

United States District Court,
District of Columbia.

Aug. 29, 1980.

Florence W. Roisman, Ilene J. Jacobs, National Housing Law Project, Washington, D.C., for plaintiffs.

Lindsay Simmons, Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

This matter is before the Court on the motion of the defendants for summary judgment, and the motion of plaintiffs for

leave to amend their complaint and to add two persons as plaintiffs. Plaintiffs brought this action to enjoin the District of Columbia from closing the facility known as the Hartford Street Family Shelter and transferring the plaintiffs, residents of Hartford Street, to two other shelters operated by D.C. Plaintiffs now seek to add as parties two residents of the Parkside Family Shelter, another facility operated by defendants, to which some of the Hartford Street residents were to be transferred. The Hartford Street residents claim that the proposed transfer violates rights based on federal and District of Columbia statutes and regulations and the federal Constitution; the Parkside residents, who are putative plaintiffs, allege that the existing conditions at Parkside violate rights guaranteed by the same provisions.

Since the inception of this litigation, the defendants have altered their plans regarding the Hartford Street Shelter. Originally, defendants had proposed to transfer the Hartford Street residents to the P Street and Parkside Shelters. By Order of July 9, 1980, the Court enjoined this proposed transfer pending a determination by the responsible official that conditions at Parkside and P Street are not so unsafe as to constitute a constructive termination of benefits under the family shelter program without due process. At the hearing on defendants' motion for summary judgment on August 4, defendants indicated that they would not attempt to close Hartford Street immediately, but would instead endeavor to phase it out, transferring its current residents to the P Street Shelter as space becomes available. In addition, defendants introduced affidavits by a fire official and the official responsible for the family shelter program that they had inspected and evaluated the P Street Shelter and concluded that the conditions there would not impose any risk to its residents. Defendants continue to press for summary judgment. They maintain that their plans for the Hartford Street Shelter violate no statutory or constitutional entitlements.

The Hartford Street residents have raised essentially two distinct constitutional claims. First, plaintiffs maintain that they have a constitutionally protected property interest in continued residence at the Hartford Street Shelter (rather than some other family shelter) that cannot be abrogated without due process. The Court finds that no such property interest exists. Second, plaintiffs maintain that they have an entitlement to some minimal form of shelter and subsistence that cannot be abrogated without due process. Plaintiffs have alleged that because conditions at Parkside and P Street are either unsafe or otherwise inadequate, transfer there is a constructive equivalent of a denial of all benefits without due process. The Parkside residents who seek to intervene as plaintiffs allege, in substance, that their placement in the Parkside Shelter constitutes a denial of benefits under the program without due process.

■■■ The Court concludes that plaintiffs do have a colorable claim to an entitlement to some minimal form of shelter that cannot be denied without due process of law. *See Williams v. Barry*, 490 F.Supp. 941 (D.D.C.1980). However, the plan now proposed by the defendants in no way infringes upon this protected interest. Plaintiffs' criticisms of the conditions at P Street were limited to the presence of wooden slats on windows, which allegedly restricted egress to fire escapes. The affidavits filed by defendants August 4 demonstrate, without contradiction, that those slats can be opened from the inside or the outside of the building and do not block access to the fire escapes. Accordingly, defendants are entitled to summary judgment on plaintiffs' claim that transfer to P Street would constitute the constructive denial of benefits without due process.

Additionally, defendants have now remedied the defect in process requiring preliminary injunctive relief. By Order of July 9, the Court enjoined the proposed transfers because the record failed to disclose that the responsible official had made a reasoned determination that the conditions at Parkside and P Street were not so unsafe as to constitute a risk to life. The August 4,

1980, affidavit of Audrey Rowe, the official responsible for the family shelter program, demonstrates on its face that Ms. Rowe has fully considered whether the transfer of Hartford Street residents to P Street would impose a risk to their safety.

Plaintiffs misconceive the nature of the July 9 Order by insisting that the Court has authorized and should undertake thorough substantive review, complete with discovery by deposition of all responsible officials, of the decision to close Hartford Street and transfer its residents.[1] Ordinarily, a decision that does not purport to affect an underlying benefit, such as the decision here, does not raise a question of constitutional significance calling for judicial intervention or oversight. A claim arises, if at all, when it becomes apparent that the change in form or circumstances may be a change in substance that has the effect of denying the recipient a constitutionally protected benefit without due process. However, where the benefit at issue is one vital to the subsistence of the recipient, due process may require more: protection against arbitrary and capricious government action may require that the responsible official consider in advance whether a decision affecting the program may have such substantial repercussions that it will have the practical effect of denying the benefit through error or inadvertence. This extraordinary requirement is intended as a protective device to ensure that officials act responsibly. It is fully satisfied by an affidavit, supported by facts. The requirement that the decision reflect consideration of whether benefits will be constructively denied is not an invitation or a predicate to judicial review of the reasons for, merits or prudence of the decision itself. So long as the underlying constitutionally protected benefit is not interfered with, a decision to make administrative changes in a program is one fully committed to the discretion of the responsible government officials and is subject only to statutory review, if any is provided. Plaintiffs may, of course, sue in federal court if they can plausibly assert that a proposed change would deny a constitutionally protected benefit without due process. Judicial review, however, would be for the limited purpose of assuring that the benefit is not denied without due process and outlining what administrative process is due if a denial is found. *See generally O'Bannon v. Town Court Nursing Center,* —— U.S. ——, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980).

Accordingly, the Hartford Street plaintiffs can no longer claim to be suffering from a deprivation of any constitutionally protected interest. The Court has not found defendants' conduct to violate any other colorable constitutional or federal statutory entitlement. The Court declines to exercise pendent jurisdiction over plaintiffs' claims arising under the D.C. Administrative Procedure Act, D.C.Code § 1–1501 *et seq.* (1973), and D.C. regulations. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Morrow v. District of Columbia,* 135 U.S. App.D.C. 160, 417 F.2d 728, 740 (1969).

For reasons more fully set forth herein, the Court will also deny the Parkside residents' motion to intervene and to amend the complaint. Accordingly, by accompanying Order, the Court grants in part defendants' motion for summary judgment; based upon defendants' representations that they will transfer the Hartford Street residents only to P Street as space becomes available, the remainder of the claim is moot.

---

1. Plaintiffs have filed an affidavit pursuant to Rule 56(f), Fed.R.Civ.P., asserting that they cannot oppose defendants' motion without elaborate discovery. Plaintiffs have, however, had a full opportunity to inspect the Hartford Street, Parkside, and P Street Shelters with the assistance of a witness qualified as an expert in housing safety and design. Additionally, a two day evidentiary hearing was held at which the issues relating to the safety and compliance with applicable codes at all three shelters were appropriately aired. Plaintiffs were offered an adequate opportunity to put on evidence relating to conditions at the shelters and to cross examine defendants' witnesses. The Court has incorporated the evidence thus presented into the record pursuant to Rule 65(a)(2), Fed.R. Civ.P. The additional discovery plaintiffs seek is not relevant to the issues raised by defendants' motion, and, accordingly, the motion pursuant to Rule 56(f) is denied.

## II.

*Factual Background:*

The District of Columbia operates three facilities providing shelter to homeless and destitute families pursuant to the D.C. Emergency Assistance Program. The program is designed to provide temporary, emergency assistance to families who are without other means of support or shelter. Four families, plaintiffs herein, have been occupying the Hartford Street Shelter for two months or more. The defendants provide similar services at two other locations, the Parkside Family Shelter and the P Street Family Shelter.

On May 23, defendants published a notice in the D.C. Register of a proposal to close the Hartford Street Shelter "due to the inadequate state of their facility." Plaintiffs submitted comments in response to this notice opposing the proposed closing. However, defendants provided no hearing or other process. Residents of the Hartford Street facility received individual notices on June 5, 1980, instructing them to vacate the facility no later than June 20, 1980. The residents in fact remained in the shelter and on June 25, additional notices were delivered to each family instructing them that they could remain until June 27.

D.C. does not own the Hartford Street Shelter and occupies the facility pursuant to a lease. On May 12, the defendants presented to the landlord a notice to quit the premises effective June 30, 1980. The defendants have subsequently revoked the notice, and continue to operate the facility pursuant to Court order.

At the hearing on the motion for a preliminary injunction on July 7 and 8, Ms. Audrey Rowe, Acting Commissioner for Human Services for the District of Columbia, testified that the decision to close Hartford Street was not made until June 23 or 24. Ms. Rowe testified that the decision to close Hartford Street was based on a number of considerations, including (a) serious concerns about the habitability of the Hartford Street Shelter, primarily based upon the lack of heat and recurring sewage prob-

lems that render some units unusable; (b) rates of utilization of the three family shelters, as particularly affected by the availability of the Parkside Shelter; and (c) the cost of operating the Hartford Street facility, approximately $226,000 in 1979, and the relation of that expense to the overall allocation of resources within the Department of Human Services.

Plaintiffs initiated this action on June 26, seeking to block the closing of Hartford Street and the planned transfer of its residents to the P Street and the Parkside Family Shelters. The Court granted a temporary restraining order on the theory that plaintiffs might have a colorable claim to a property interest as tenants under local law that would entitle them to due process protections. Upon consideration of further authority indicating that plaintiffs had no common law or statutory rights as tenants, the Court, on July 1, vacated the temporary restraining order, but stayed the effect of the July 1 Order to permit plaintiffs to take an emergency appeal.

The stay remained in effect until hearings on plaintiffs' motion for a preliminary injunction were held on July 7 and 8, 1980. At that hearing, plaintiffs adduced evidence suggesting that a transfer to Parkside and P Street might expose plaintiffs now at Hartford Street to a serious fire hazard that had not been considered by Ms. Rowe, the official responsible for the decision to close Hartford Street. Specifically, plaintiffs presented expert testimony that the P Street Shelter was unsafe because windows exiting to fire escapes had been barred; the Parkside Shelter was alleged to be unsafe because it did not have two fully enclosed means of egress, and one partially enclosed stairway contained plain rather than wired glass windows. On the basis of this testimony, the Court, on July 9, granted a preliminary injunction to remain in effect until the Court ruled on defendants' motion for summary judgment.

At the hearing on defendants' motion for summary judgment, held on August 4, defendants represented that they no longer planned to transfer any Hartford Street

residents to the Parkside Shelter. Rather, defendants indicated that they would transfer Hartford Street residents only to the P Street Shelter as space there became available. Defendants would close Hartford Street only when its residents had been moved to P Street, were relocated elsewhere, or otherwise became ineligible for further assistance under the shelter program. Defendants also presented two affidavits, one from Ms. Rowe and a second from Lt. William Price of the D.C. Fire Protection Division of the D.C. Fire Department. Lt. Price stated that the wooden bars across the windows at P Street were designed to be opened from the inside or outside and could easily be broken by fire fighters or other emergency personnel. He stated that the bars met the requirements of the D.C. Fire Code. Ms. Rowe stated that she had considered the condition of the P Street Shelter, and, on the basis of Lt. Price's July 22 inspection of the premises, had concluded that conditions at P Street did not pose an unacceptable risk to the lives of plaintiffs should they be transferred there.

### III.

In opposing their transfer from Hartford Street, plaintiffs raise claims under the Constitution, a federal statute, and D.C. statutes and regulations. In the succeeding sections, the Court will consider first plaintiffs' federal statutory claims; second, plaintiffs' claims under the Constitution; and third, the reasons why the Court will not exercise ancillary jurisdiction over plaintiffs' claims arising under local law. Finally, the Court will address plaintiffs' motions to add parties and to amend their complaint.

### IV.

*Federal Statutory Claims:*

Plaintiffs originally claimed that they are entitled to a hearing prior to transfer pursuant to Title IV–A of the Social Security Act, 42 U.S.C. § 601 *et seq.* (1976), under which the federal government provides partial reimbursement to states for the costs of operating emergency family shelters such as the ones at issue here. In later pleadings, plaintiffs have also suggested that a right to a hearing may be guaranteed under the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.* (1976).

However, plaintiffs point to no specific provision of either statute that guarantees a right to a hearing before the general form of services may be altered, nor has the Court independently discovered such a provision. Neither is it possible to imply such a right from the general outlines of the statutes. *See Thompson v. Washington*, 162 U.S.App.D.C. 39, 497 F.2d 626 (1973). Thus, in *Thompson* and its companion cases, *Marshall v. Lynn*, 162 U.S.App. D.C. 56, 497 F.2d 643 (1973), *cert. denied*, 419 U.S. 970, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974); *Tenants Council of Tiber Island– Carrollsburg Square v. Lynn*, 162 U.S.App. D.C. 61, 497 F.2d 648 (1973), *cert. denied*, 419 U.S. 970, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974), the Court found an explicit statutory purpose to maintain rents at a low level from which it could infer a right to notice and comment before local housing authorities and HUD could approve rental increases in publicly financed housing. At most, one could infer from Title IV–A of the Social Security Act a Congressional purpose to provide relief of various kinds to needy families. But this goal is in no way implicated by a decision by the local authority, here the defendants, to choose to provide this service at one location rather than another. Moreover, in *Thompson* and its companions, HUD, a federal agency, retained direct responsibility for the approval of the action at issue. This ongoing federal involvement, which is absent in the instant case, is a strong indication of the purpose of Congress to provide a federal statutory right upon which the plaintiffs might base their claims.

In any event, even if a federal right were to exist, elementary principles of exhaustion require that plaintiffs seek recourse first from the federal agency responsible for administering the Emergency As-

**52**

sistance funds before seeking judicial relief. *See McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Douglas v. Hampton*, 512 F.2d 976, 988 (D.C. Cir. 1975).

V.

*Constitutional Claims:*

A.

█ Plaintiffs also claim the right to some form of hearing based on constitutional guarantees of due process. The Constitution nowhere provides any guarantees of safe or habitable housing. *Lindsey v. Normet*, 405 U.S. 56, 75, 92 S.Ct. 862, 875, 31 L.Ed.2d 36 (1972). For the protections of due process to apply, plaintiffs must identify some property interest arising from an independent source such as state law or policy. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

Plaintiffs assert an entitlement to continued occupancy at Hartford Street arising out of (a) specific statutes and regulations authorizing the emergency assistance program; (b) common law and statutory rights of tenancy; and (c) statutes and regulations governing the procedure for terminating or altering the provision of welfare benefits.

█ For the reasons stated in the Court's Order of July 2, 1980, the Court has concluded that the residents of Hartford Street can assert no claim to an entitlement to remain there, rather than at some other shelter operated by the city under the same program. The Court has considered and rejected claims based on common law and statutory rights of tenancy. *See* Order of July 2, 1980. Even assuming that they apply, the procedural guarantees of the Social Security regulations, D.C. regulations and the DC–APA relied upon by plaintiffs merely prescribe the procedure that must attend the removal of a benefit, and have no relevance in determining whether a property right exists. *See O'Bannon v. Town Court Nursing Center*, —— U.S. ——

n. 1, 100 S.Ct. at 2478 n. 1 (Blackmun, J., concurring). Nor can plaintiffs identify a property interest arising out of any policy or mutually explicit understanding. *See Perry v. Sindermann*, 408 U.S. at 601, 92 S.Ct. at 2699. Indeed, prior to accepting benefits under the emergency assistance program, each potential resident (including each plaintiff herein) is required to sign a statement indicating his or her understanding that:

> this shelter provided for my family and me is temporary. I agree to move immediately as soon as suitable housing or quarters are found.

*See* Agreements by Families, filed as Exhibits to Motion of Defendants for Summary Judgment, July 7, 1980. While this statement may not foreclose rights which plaintiffs might otherwise have, it obviously does not create any. Although the agreement may be read to support a finding of an entitlement to some minimal form of shelter, nothing in this statement can be construed to support an understanding that residents could expect to remain at the Hartford Street Shelter (rather than some other shelter) indefinitely, or even until permanent housing could be found.

█ Accordingly, the Court can find no reason to disturb the conclusion reached on July 1, 1980, that this case is controlled by the recent decision of the Supreme Court in *O'Bannon v. Town Court Nursing Center*. Here, as in *O'Bannon*, the government has decided to terminate its contractual relationship with a third party who has been providing facilities for a government–funded benefits program. The right of plaintiffs to participate in and receive benefits from the program has not been substantially disturbed. Although it may be that transfer will have an effect on plaintiffs, the existence of some adverse impact on plaintiffs by a government decision does not form the predicate for finding a constitutional property or liberty interest requiring due process protection. *O'Bannon v. Town Court Nursing Center*, —— U.S. at ——, 100 S.Ct. at 2476–2478.

Plaintiffs do have a colorable claim that the right to receive some benefits under the program is a protected property interest under the fifth amendment that cannot be terminated without due process of law. *See Williams v. Barry* 490 F.Supp. 941, (D.D.C.1980). The existence of such an interest is supported by the totality of circumstances here, including the District's announced policy on the homeless, *see Williams v. Barry, supra,* its specific conduct toward these plaintiffs, and the agreement plaintiffs signed upon entering the shelter. *See Perry v. Sindermann,* 408 U.S. at 601, 92 S.Ct. at 2699.

■ This property interest, if it exists, however, does not encompass the right to any specific level of services, any specific type of housing (such as apartments rather than hotel–style accommodations), or the right to be lodged in any particular neighborhood. The evidence proffered by plaintiffs in response to defendants' summary judgment motion supports only a finding that plaintiffs may have a property interest in minimal subsistence and shelter pursuant to the emergency assistance program.

Assuming *arguendo* that such a property interest exists, defendants' conduct–in light of the August 4 affidavits and the plans to move residents only to P Street–does not violate that interest. The affidavit of Audrey Rowe, filed August 4, 1980, fully satisfies the Court's concern that the defendants had failed to consider whether the transfer might have had the effect of denying to plaintiffs minimally acceptable shelter through error or inadvertence. The Rowe affidavit demonstrates that the defendants took a "hard look" at the possibility that the proposed transfer would result in a constructive denial of benefits by exposing plaintiffs to a life–threatening risk. Where governmental action is not intended to affect a protected interest, due process requires no more.

At the hearing on the preliminary injunction, plaintiffs alleged that transfer to the Parkside and P Street Shelter would amount to a constructive denial of benefits. If defendants' actions would deny to plaintiffs minimally habitable shelter without due process, then plaintiffs might have a valid claim that rights guaranteed by the fifth amendment have been violated. However, there is no basis for a claim in this context that this risk now exists. Plaintiffs' only criticism directed at the P Street Shelter was the existence of bars on the windows. The affidavit of Lt. Price demonstrates without contradiction that the bars do not constitute a hazard; indeed, Lt. Price's affidavit suggests that the bars were designed to protect young children from falling through the windows, a concern plaintiffs have explicitly raised in connection with the Parkside Hotel. The information that plaintiffs have sought to discover in their affidavit pursuant to Rule 56(f) would not be relevant to the conclusions reached by Lt. Price.

■ In view of the fact that no property interest of plaintiffs is infringed by the proposed transfer to P Street, defendants are entitled to summary judgment on plaintiffs' constitutional claims. It is important to note, however, that plaintiffs only constitutional interests are procedural, not substantive. Even if defendants decided officially to terminate the program, the only issue reviewable by a Court would be whether plaintiffs were afforded their full measure of procedural protection, not whether the decision was prudent.

## VI.

■ In view of the disposition of plaintiffs' constitutional claims, the Court will not exercise pendent jurisdiction over the claims arising under D.C. law. The question of whether the defendants complied with applicable provisions of D.C. law in determining to close Hartford Street raises the possibility of substantial new factfinding and the resolution of difficult and contested issues of D.C. law. Where, as here, the federal claims are disposed of before trial, dismissal without prejudice of the state claims is appropriate. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

54

There remains the question of the requests of two residents of the Parkside Shelter to join this proceeding pursuant to Rule 20, Fed.R.Civ.P., and for leave to amend the complaint pursuant to Rule 15(a), Fed.R.Civ.P., to raise complaints relating to conditions at the Parkside Shelter. The proffered joinder and amendment would substantially alter the character and scope of the proceedings. Plaintiffs brought this action to block a planned transfer of residents from the Hartford Street Shelter to the P Street and Parkside Shelters; by this memorandum, the Court has finally resolved these claims.

Although the claims of the Hartford Street and Parkside residents all relate generally to the operation of the Emergency Assistance Program, they do not arise out of the same transaction or occurrence as required for joinder by Rule 20(a), Fed.R. Civ.P. *See Martinez v. Safeway Stores, Inc.*, 66 F.R.D. 446 (D.Cal.1975); *Cohen v. District of Columbia National Bank*, 59 F.R.D. 84 (D.D.C.1972). Rather, the claims of the Parkside residents involve discrete questions of fact unrelated to the plan to close Hartford Street and only tangentially related to the instant proceeding.

Indeed, by the proposed joinder and amendment, plaintiffs seek to expand the scope of this proceeding to a plenary review of all aspects of the family shelter program. Even if it were appropriate, such review would entail substantial delay and new factfinding. In view of the fact that the claims of the Hartford Street plaintiffs are fully resolved herein, and they have no further stake in the claims raised by the Parkside residents, amendment at this stage would unduly prejudice the defendants without imposing substantial harm to the Parkside residents, who may bring an action in Superior Court, or a new action in District Court. Amendment at this stage is not appropriate. *See Weigand v. Afton View Apartments*, 473 F.2d 545 (8th Cir. 1973).