Houston, J.
Plaintiff Amilda Padilla (Padilla) was enrolled in the Waltham Transitional Housing Demonstration Project (the program), a public housing program supervised by defendant Executive Office of Communities and Development (EOCD) and defendant Department of Public Welfare (DPW). After Padilla violated the program’s terms of participation, the Wal-tham Housing Authority (WHA) terminated her from the program; after a hearing, the EOCD upheld the WHA’s termination decision. Padilla now appeals the EOCD’s decision pursuant to G.L.c. 30A, §14 or, alternatively, pursuant to G.L.c. 249, §4. For the reasons stated below, Padilla’s appeal is DENIED.
BACKGROUND
In or about September 1992, Padilla enrolled in the program. The program serves homeless individuals whose special problems prevent them from securing and maintaining permanent housing. Its purpose is to provide participants with temporary housing units[3] at the government’s full expense and a range of social services intended to prepare them for a stable and permanent living arrangement in a public housing development. Although the DPW and EOCD fund and supervise the program, local housing authorities, such as the WHA, administer the program.
, According to the program’s rules, the local housing authority and the participant formulate a service plan documenting, among other things, the various services that the participant will receive during the program’s transitional phase.[4] As participants progress through the transitional phase, they are encouraged to be more independent and the level of support services that they receive declines. If participants complete the transitional phase successfully by adhering to program rules, satisfying the goals outlined in their individual service plans, and demonstrating an ability to live independently as public tenants, they will be afforded the opportunity to lease a unit in a public housing development.
Before receiving a temporary housing unit, participants must sign a ‘Terms of Participation” form which articulates the program’s conditions, with which they must comply to remain in the program, and termination procedures. Padilla signed the terms of participation form, agreeing to abide by the program rules.[5] The program’s termination procedures define two types of termination: emergency and non-emergency termination. The emergency termination procedure permits local housing authorities to terminate immediately participants who engage in criminal activity or pose a risk of serious harm to themselves, others, or their buildings.
According to the non-emergency termination procedure, a local housing authority may terminate participants for, among other reasons, disrupting others in a manner that results in three or more complaints or having unauthorized overnight guests in their temporary housing emits. Before the authority may conduct a non-emergency termination, however, it must issue the participant at least three written warnings documenting the participant’s violation of program rules.[6]
On March 10, 1993, Padilla had an unauthorized overnight guest. During the early morning hours of March 11, 1993, Padilla’s estranged husband broke into her temporary housing unit and stabbed her guest. The WHA responded by terminating Padilla on an emergency basis; Padilla appealed her emergency termination to the EOCD.
As a result of Padilla’s appeal, the EOCD reversed the WHA’s emergency termination decision on two grounds: (1) the WHA’s written termination notice failed to specify whether the WHA was conducting an emergency or non-emergency termination in violation of program procedures; and (2) the WHA lacked sufficient grounds to conduct an emergency termination. *130 Although the EOCD reversed the WHA’s termination decision, however, it found that she violated program rules by engaging in disruptive conduct on or about March 1 and by having an unauthorized guest on March 10. When the EOCD provided Padilla with written notice of its decision and findings, consequently, it ordered her case manager to issue two written warnings based on her violations of program rules. Padilla’s case manager issued her two written warnings in accordance with the EOCD’s directive; Padilla did not protest either written warning.
As a result of her March rule violations, the WHA also elected to revise her service plan so that it could monitor Padilla’s behavior and activities more closely. According to her revised service plan, to which Padilla assented, Padilla was not entitled to have any guest in her temporary housing unit after 9:00 p.m. without prior authorization. On May 11, 1993, Padilla violated her revised service plan by having an unauthorized guest in her temporary housing unit after 9:00 p.m. The case manager issued her a third written warning, and the WHA decided to terminate her on a non-emergency basis.[7] Padilla appealed the WHA’s termination decision to the EOCD. After a hearing on June 9, 1993, the EOCD upheld the WHA’s termination decision.
After upholding the WHA’s termination decision, the EOCD offered to enroll Padilla in another housing program and presented her with several options. Padilla, however, asked the EOCD and the WHA if she could remain in her temporary housing unit until she completed a psychological evaluation. The EOCD and WHA agreed to allow her to remain in her temporary housing unit during her psychological evaluation, however, they informed Padilla that her future public housing options might be limited on account of capacity constraints.
After completing her psychological evaluation in September 1993, Padilla requested permission to remain in her temporary housing unit permanently. The EOCD and DPW denied her requests but agreed to house Padilla in a traditional shelter.
DISCUSSION
Padilla appeals the EOCD’s June 9 termination decision pursuant to G.L.c. 30A; the EOCD and DPW contend that Padilla is not entitled to judicial review pursuant to G.L.c. 30A on the ground that the EOCD hearing was not an “adjudicatory proceeding” within the meaning of G.L.c. 30A. An “adjudicatory proceeding” within the meaning of G.L.c. 30A is “a proceeding before an agency in which the legal rights, duties or privileges of specifically named persons are required by constitutional right or by any provision of the General Laws to be determined after opportunity for an agency hearing.” G.L.c. 30A, §1(1). According to the EOCD and DPW, neither the federal nor state constitutions nor any Massachusetts statute required the EOCD to conduct a termination hearing before removing Padilla from the program. Arguing that she had a property interest in her temporary housing unit, Padilla claims that the due process clause of the Fourteenth Amendment required the EOCD to conduct a pretermination hearing.
The procedural safeguards of due process apply exclusively to the deprivation of interests inherent in the Fourteenth Amendment’s conceptions of liberty and property. Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). However, the United States Constitution does not create property interests. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). Property interests are both created and defined by sources external to the Constitution, such as state law. Id.
Individuals who receive government benefits have a property interest in benefits to the extent that statutory or administrative standards entitle them to receive such benefits Goldberg v. Kelly, 399 U.S. 254, 261-62 (1970). To establish a property interest in a benefit, a person must have a legitimate claim to entitlement to the benefit. Regents of State Colleges v. Roth, supra. Padilla claims that the program’s design and administrative standards entitle her to receive continuing social services and permanent housing. This court disagrees.
The program’s design and purpose belie Padilla’s claim. The program targets needy families[8] who are generally already living in traditional public homeless shelters, and its purpose is to provide a temporary housing unit and necessary support services to prepare such families for future permanent housing as tenants in a public housing development. Padilla’s claim that program participants are entitled to permanent housing after enrolling in the program is unfounded. The program’s rules and administrative standards make clear that participants are eligible for public housing only if they complete the program successfully by abiding by the program’s rules and demonstrating that they have attained individual goals and are prepared adequately for a permanent, independent living arrangement. Although Padilla may have had an expectation of future permanent housing, she had not completed the program successfully and had no tenancy and was, therefore, not entitled to permanent housing. Rooney v. Yarmouth, 410 Mass. 485, 494 (1991) (unilateral expectation of receiving a benefit is insufficient to create a property interest in it).
Further, the program’s administrative standards do not create a legitimate entitlement to continued participation in the program. The program’s rules state clearly that participants “will be considered to be in temporary shelter, [they] will have no rights of tenancy and can be removed from a transitional shelter unit without a formal court eviction.” This language does not create any entitlement to permanent housing or continued participation in the program. Caton v. Barry, 500 F.Supp. 45, 52-53 (D.C. Dist. 1980) (resi *131 dents of temporary homeless shelter lack property interest in continued occupancy).
This court concludes that Padilla had no property interest in continued participation in the program or in permanent residence in her temporary housing unit. Consequently, the EOCD’s pretermination hearing was not constitutionally required.[9] Since Padilla’s due process claim fails and she cites no other statutory or constitutional authority requiring the EOCD to conduct pretermination hearings, the EOCD hearing was not an “adjudicatory proceeding” within the meaning of G.L.c. 30A, §1(1). Forsyth School of Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 214-17 (1989). Padilla is, therefore, not entitled to judicial review pursuant to G.L.c. 30A.
This court’s conclusion that the EOCD’s termination decision is not reviewable pursuant to G.L.c. 30A, however, does not foreclose judicial review entirely. Since Padilla has exhausted her administrative remedies and lacks an alternative avenue for judicial review, she is entitled to judicial review pursuant to G.L.c. 249, §4. Mayor of Revere v. Civil Service Commission, 31 Mass.App.Ct. 315, 321 (1991) (action in the nature of certiorari pursuant to G.L.c. 249, §4 is available “to correct errors of law in administrative proceedings where . . . judicial review is otherwise unavailable”).
The standard of review under G.L.c. 249, §4 varies according to the nature of the action of which the petitioner seeks judicial review. Forsyth School of Dental Hygienists v. Board of Registration in Dentistry, supra, 404 Mass. at 217. Padilla does not challenge the EOCD’s factual findings, rather, she claims that the basis of the EOCD’s termination decision was an unconstitutional guest restriction. Therefore, this court’s review pursuant to G.L.c. 249, §4 is limited to determining whether the EOCD’s termination decision was arbitrary and capricious or based upon a substantial error of law that affected Padilla’s rights materially. Id. at 218 (board’s decision may only be reversed pursuant to G.L.c. 249, §4 if it was based upon a legally untenable ground or was arbitrary and capricious); Commissioner of Revenue v. Lawrence, 379 Mass. 205, 208 (1979) (court will correct substantial errors of law pursuant to G.L.c. 249, §4).
According to the program’s non-emergency termination procedures, the local housing authority may not terminate a participant unless a case manager has issued three written warnings documenting the participant’s violation of program rules.[10] Padilla’s case manager issued her three written warnings, two of which were based upon Padilla’s violations of the program’s guest restrictions. Although she does not impugn the EOCD’s finding that she violated the program’s guest restrictions, Padilla claims that the program’s guest restrictions violated her constitutional rights of association, privacy, and due process. The EOCD, according to Padilla, lacked a lawful basis upon which to terminate her. This court disagrees.
The right “to enter into and maintain certain intimate human relationships” is a fundamental element of the freedom of association guaranteed by the First Amendment. Concord Rod & Gun Club, Inc. v. Massachusetts Commission Against Discrimination, 402 Mass. 716, 721 (1988). The program’s guest restrictions burdened Padilla’s freedom to associate with others by limiting her freedom to have guests in her temporary housing unit. Regulations that impinge on an individual’s freedom of association are unconstitutional unless they are substantially related to a compelling governmental interest. Attorney General v. Bailey, 386 Mass. 367, 381 (1982).
In support of her claim that the program’s guest restrictions are unconstitutional, Padilla relies exclusively upon McKenna v. Peekskill Housing Authority, 647 F.2d 332 (2nd Cir. 1981), and Lancor v. Lebanon Housing Authority, 760 F.2d 361 (1st Cir. 1985). In McKenna, the court declared unconstitutional a housing authority's rule prohibiting tenants in public housing projects from having overnight guests without the authority’s permission. The court held that the restriction violated the tenants’ rights to associate and intruded upon their privacy.[11] McKenna v. Peekskill Housing Authority, supra, 647 F.2d at 335. The restriction at issue in McKenna applied exclusively to tenants in a public housing project. Padilla, however, was not a tenant; she was a voluntary participant in a temporary shelter program.
Unlike public tenants, Padilla, like other participants in the program, manifested social and behavioral problems that contributed to her inability to obtain permanent housing. The program’s purpose was to provide participants with a temporary, highly structured living environment in which to receive an array of social services to assist them in combating their problems and obtaining permanent housing. The EOCD and DPWhave compelling interests in eradicating homelessness and ensuring the participants’ safety. The program’s guest restrictions clearly serve these interests; the need to ensure participants’ safely and to provide an environment conducive to fulfilling the program’s purpose of enabling troubled, homeless individuals to obtain and maintain permanent public housing justify the restrictions on participants’ independence.[12] Cf. Serreze v. YWCA of Western Massachusetts, Inc., 30 Mass.App.Ct. 639, 644 n. 11 (1991) (landlord may not use self-help eviction process to evict participants in a transitional living program where the participants manifest no social or behavioral disorders justifying substantive limitations on their living accommodations).
In McKenna, the court recognized that the government had legitimate interests in “maintaining safe, decent housing [for public tenants] and in keeping track of occupancy and eligibility in public housing” *132 but held that the guest restrictions were insufficiently tailored to serve those interests. McKenna v. Peekskill Housing Authority, supra, 647 F.2d at 335.[13] This court finds that the program’s guest restrictions are sufficiently tailored to serve the government interests in providing safe, permanent housing to homeless individuals trapped in a cycle of destitution and dislocation. In accordance with the program’s guidelines, the local housing authorities formulate individual plans with participants to address their specific problems and needs. Although the prohibition against unauthorized overnight guests was a standard element of the program’s terms of participation, local housing authorities monitor participants, assessing their progress and revising their service plans accordingly. The amount and extent of restrictions, including guest restrictions, therefore, was based upon an individualized assessment of need.
Further, the program provided temporary housing. If participants completed the program successfully, they became tenants and were no longer subject to overnight guest restrictions. Indeed, the program was designed to impose housing restrictions temporarily during a transitionaiy pretenancy phase to prepare participants for a living arrangement in which they would be completely independent. Unlike the restriction in McKenna, which imposed intrusive guest restrictions on public tenants indefinitely, the program’s guest restrictions were in force exclusively during the pretenancy period in which participants were learning to live independently. Under these circumstances, this court finds that the program’s guest restrictions, which applied exclusively to participants living in temporary housing units, did not violate participants’ constitutional rights to privacy and association.
ORDER
For the foregoing reasons, it is ORDERED that plaintiff Amilda Padilla’s petition for certiorari be DENIED.

 Under the express terms of the program, participants’ housing accommodations are temporary shelters: they have no rights of tenancy and can be removed without formal eviction proceedings.

 The transitional phase lasts Em average of one year although its duration depends ultimately upon the participant’s ability to complete the program successfully. Successful participants receive leases in subsidized public housing developments.

 These terms included: (1) a promise not to have overnight guests without proper authorization: and (2) a promise to refrain from disruptive conduct.

 If the local housing authority decides to terminate a participant on a non-emergency basis, it must provide the participant written notice and an opportunity to appeal its termination decision to the EOCD before compelling the participant to vacate the temporary housing unit.

 The DPW and WHA relocate participants who desire to leave the progrEim and unsuccessful participants to alternative public shelters. Termination from the program, therefore, does not automatically result in homelessness.

 The progrEim’s rules and procedures assign responsibility to the local housing authorities for screening and selecting possible referrals for the program. Local housing authority administrators have discretion to select suitable families; homeless families are not entitled to enrollment in the program as a matter of right.

 The existence of program rules, which require a pre-termination hearing before a participant may be removed on' a non-emergency basis, does not establish a constitutionally protected property interest. Fontana v. Commissioner of the Metropolitan District Commission, 34 Mass.App.Ct. 63, 65 (1993).

 Although Padilla challenged the validity of the third warning at the EOCD termination hearing, she now seeks judicial review of all three warnings. Since Padilla never objected to the first and second written warnings, her current claims that these warnings are invalid are beyond the scope of this court’s review under G.L.c. 249, §4. This court’s ruling on the constitutionality of the third written warning also disposes of Padilla’s challenge to the second written warning. The WHA also manifestly complied with the program’s procedures when it issued the first written warning based on Padilla’s disruptive conduct.

 The Lancor court considered a similar guest restriction contained in public tenants’ leases. Expressly reserving judgment with respect to the lease provision’s constitutionality, the court held that it was an unnecessary and unreasonable restriction in violation of federal regulations. Lancor v. Lebanon Housing Authority, supra, 760 F.2d at 363.

 As a result of Padilla’s violation of the program’s guest restriction, her guest was stabbed in the presence of Padilla and her children. Her violation provides a clear illustration of the guest restriction’s relationship to safe housing.

 The McKenna court surmised that the guest restrictions on tenants were designed primarily to ensure that only eligible individuals resided in the public housing development. The purpose of the program’s guest restrictions in this case is broader. In addition to assisting local housing authority administrators in enforcing eligibility requirements, the program’s guest restrictions promote housing safety and facilitate effective monitoring of participants’ success in the program.